EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>José M. Toro Iturrino | 2014 TSPR 44<br><br>190 DPR ____ |

Número del Caso: CP-2012-10

Fecha: 10 de marzo de 2014

Comisionada Especial:

       Hon. Jeannette Ramos Buonomo

Abogado del Querellado:

       Lcdo. Harry Padilla Martínez

Oficina de la Procuradora General:

       Lcda. Tatiana Grajales Torruellas
       Subprocuradora General

       Lcda. Minnie H. Rodríguez López
       Procuradora General Auxiliar

Oficina de Inspección de Notarías:

       Lcda. Lourdes Quintana Lloréns
       Directora

Materia: Conducta Profesional- Censura enérgica por infracción al Canon 38 de ética Profesional y la Regla 5 del Reglamento Notarial.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: José M. Toro Iturrino

CP-2012-10

PER CURIAM

En San Juan, Puerto Rico, a 10 de marzo de 2014.

El 17 de mayo de 2012 la Oficina del Procurador General de Puerto Rico presentó una querella sobre conducta profesional contra el Lcdo. José M. Toro Iturrino (licenciado Toro Iturrino, el querellado o el letrado) en cumplimiento con la orden de este Tribunal.[1] En la misma, se le imputó violación al Canon 38 de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 38, y a la Regla 5 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, al autorizar la Escritura Número 1 de 20 de enero de 2005. Ello, en atención a que la transacción se realizó como parte de un pleito contencioso donde

---

[1] Examinados el *Informe* de la Oficina del Procurador General y el escrito titulado *Expresión y aclaración de asuntos fácticos del Informe sometido por la Procuradora General*, presentado por el querellante, Dr. Giuseppe Pandolfi de Rinaldis, el 10 de noviembre de 2011 emitimos una Resolución donde autorizamos presentar la querella de este caso.

el abogado era el representante legal de una parte en el pleito.

Luego de que el licenciado Toro Iturrino sometiera su posición sobre las alegaciones presentadas, nombramos a la Hon. Jeannette Ramos Buonomo como Comisionada Especial para que recibiera y aquilatara la prueba.[2] Además, le requerimos que preparara un informe con sus determinaciones de hechos y las recomendaciones que estimara procedentes.

Posteriormente, el querellado presentó su contestación al Informe de la Comisionada y aceptó su contenido. Examinado el referido escrito y la contención del querellado, coincidimos con la Comisionada Especial en que el abogado incurrió en la violación ética señalada.

Para la atención de la querella ética que nos ocupa, veamos los antecedentes fácticos que se desprenden del Informe de la Comisionada Especial y del legajo del caso.

I

El Lcdo. José M. Toro Iturrino fue admitido al ejercicio de la abogacía el 18 de noviembre de 1981. El 4 de enero de 1982 le fue expedida la autorización para ejercer como notario público. Este se dedica a la práctica privada de la profesión y tiene su oficina profesional ubicada en el municipio de Sábana Grande.

---

[2] Vista la *Querella* presentada por la Oficina de la Procuradora General y la *Contestación a la Querella* presentada por el Lcdo. Harry N. Padilla Martínez, abogado del querellado, se nombró a la Hon. Jeannette Ramos Buonomo, exjueza del Tribunal de Apelaciones, para que en presencia de las partes y en calidad de Comisionada Especial, recibiera la prueba y nos rindiera un informe con las determinaciones de hecho y recomendaciones que estimase pertinentes. Véase, Resolución de 27 de junio de 2013.

El Dr. Giuseppe Pandolfi De Rinaldis (doctor Pandolfi, el querellante o el quejoso) presentó una queja ante el Tribunal Supremo contra el licenciado Toro Iturrino donde le imputó la violación de los Cánones de Ética Profesional 18, 21, 35 y 38, 4 L.P.R.A. Ap. IX.[3] En términos generales, le imputó conflicto de interés y apariencia de conducta indebida al asumir la representación legal de personas cuyos intereses estaban en conflicto.

El letrado representó al Sr. Erasmo Asencio Rivera (señor Asencio Rivera) en el caso <u>Erasmo Asencio Rivera, et al. v. Francisco Negrón Mora</u>.[4] Surge de los hechos de ese caso que el 2 de mayo de 1994 el señor Asencio Rivera y el Sr. Francisco Negrón Mora (señor Negrón Mora) suscribieron un contrato de opción de compra mediante el cual, el segundo obtuvo la primera opción de compra de un solar identificado con el número 17 en un proyecto de urbanización ubicado en el barrio la Parguera de Lajas, Puerto Rico.[5]

El 26 de mayo de 1998 el señor Asencio Rivera y su esposa, la Sra. Francisca Romero Moreno, por conducto del licenciado Toro Iturrino, presentaron una demanda en daños y perjuicios contra el señor Negrón Mora ante el Tribunal

---

[3] Véase Queja AB-2006-90, Anejo I de la Querella presentada por la Oficina del Procurador General, pág. 86.

[4] Civil Núm. CD-1998-0469.

[5] Véase *Demanda*, Anejo VIII de la Querella presentada por la Oficina del Procurador General, pág 46. Mediante el contrato otorgado, el co-demandado Sr. Francisco Negrón Mora, aseguraba haber sometido un proyecto de lotificación de una finca de 2.893 cuerdas ubicada en el Barrio Parguera del Municipio de Lajas, ante la A.R.Pe., caso número 92-57-D262.

de Primera Instancia (TPI), Sala de San Germán.[6] En ella, se reclamaba el cumplimiento específico del contrato de opción entre las partes en relación al solar identificado con el número 17.[7] El licenciado Toro Iturrino también adujo que los demandantes se habían comprometido verbalmente a venderle al quejoso un predio de terreno que se segregaría del solar en cuestión. Empero, al señor Negrón Mora enterarse de la transacción, enmendó el plano dividiendo el solar opcionado y vendió dicho predio directamente al doctor Pandolfi.[8]

Así las cosas, el 22 de septiembre de 1999 la demanda fue enmendada para incluir al quejoso y a su esposa como demandados por interferencia culposa de obligación contractual y por los daños causados a una tubería de alcantarillado de los demandantes. El TPI dictó sentencia desestimando la primera causa de acción contra el quejoso por estar prescrita. De otra parte, la acción de daños se desestimó sin perjuicio ya que ambas partes solicitaron el desistimiento voluntario de ella.[9]

Transcurridos seis años de litigio, el 20 de enero de 2005 el licenciado Toro Iturrino autorizó la Escritura Núm. 1, titulada "Escritura de Segregación, Compraventa y

---

[6] Íd.
[7] Íd.
[8] Íd.
[9] Véase, *Sentencia Parcial* de 25 de junio de 2004, Anejo XV de la Querella presentada por la Oficina del Procurador General, pág. 70. Véase además, *Moción solicitando desistimiento*, Anejo XIV de la Querella presentada por la Oficina del Procurador General, pág. 68.

Traspaso".[10] Mediante la misma, el señor Negrón Mora segregaba, cedía y traspasaba el predio de terreno identificado como solar 17 a favor del señor Asencio Rivera y su esposa. [11]

En ese escenario, cinco días luego, los demandantes por medio del licenciado Toro Iturrino, presentaron una moción urgente contra el demandado, señor Negrón Mora.[12] En esta, alegaron que, luego de otorgarse la escritura objeto del inmueble en controversia, fueron a inspeccionar el solar. En ese momento se percataron de que no tenía la toma para la instalación de las aguas negras hacia el alcantarillado.[13] Los demandantes expresaron que tanto el señor Negrón Mora como el doctor Pandolfi habían intentado nuevamente desconectar el alcantarillado del solar en cuestión.[14] Por esto, solicitaron que se le ordenara al demandado a conectar el desagüe de aguas negras al sistema de alcantarillado o que, en la alternativa, autorizara a la parte demandante conectar a su propio costo el desagüe de aguas negras al sistema de alcantarillado a través del solar adquirido sin afectar en forma alguna predios de terceras personas.[15] El TPI declaró con lugar dicha moción y ordenó al señor Negrón Mora a abstenerse de intervenir

---

[10] Véase *Escritura de Segregación, Compraventa y Traspaso de Solar*, Anejo XI de la Querella presentada por la Oficina del Procurador General, pág. 55.

[11] El mismo fue objeto de la controversia en el caso Civil Núm. CD 1998-0469, supra.

[12] El 25 de enero de 2005. Véase *Moción urgente*, Anejo XII de la Querella presentada por la Oficina del Procurador General, pág. 64.

[13] Íd.

[14] Íd.

[15] Íd.

para que los demandantes pudieran conectar la tubería de aguas negras de su propiedad a través del solar adquirido, al alcantarillado de la urbanización residencial Villa Panorámica.[16]

De otra parte, el querellante expresó que en el caso de Carlos R. González, et als. v. Francisco Negrón Mora[17] ventilado ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, el querellado presentó una moción en representación del Sr. Charles Castro Franco, para este último intervenir en el pleito. El señor Castro Franco estaba representado inicialmente por el Lcdo. Luis Fernández Domenech.[18] El señor Castro Franco tenía una reclamación del solar 16 de Villa Panorámica de Lajas contra el urbanizador del proyecto, el señor Negrón Mora. Es menester recordar que el señor Negrón Mora (parte demandada en este caso) fue uno de los otorgantes de la anteriormente mencionada Escritura Núm. 1. En la misma, el querellado ejerció funciones como notario. En este pleito, el tribunal había emitido una *Sentencia Parcial* desestimando con perjuicio la acción interpuesta por el señor Castro Franco. El querellante presentó un escrito por derecho propio en reacción a la petición de intervención

---

[16] Véase, *Orden*, Anejo XIII de la Querella presentada por la Oficina del Procurador General, pág. 67.

[17] Civil Núm. IAC- 1997-0368.

[18] El señor Negrón Mora, como dueño y desarrollador de una finca en Villa Parguera, se comprometió a realizar varias obras de infraestructura en el lugar, para que A.R.Pe. otorgara los permisos de segregación necesarios y así entregarle título de propiedad a los optantes de los terrenos. Debido al incumplimiento del señor Negrón Mora con lo anterior, los optantes, entre ellos el Sr. Charles Castro Franco, radicaron una acción civil por incumplimiento de contrato ante el TPI. Véase, *Informe de ODIN*, Anejo XVI de la Querella presentada por la Oficina del Procurador General, pág. 71.

presentada por el licenciado Toro Iturrino. El doctor Pandolfi solicitó la inhibición del licenciado Toro Iturrino. Empero, su reclamo no fue atendido por el tribunal en la vista celebrada el 2 de agosto de 2005.[19]

A la luz de los hechos mencionados el asunto fue remitido a la Oficina de Inspección de Notarías (ODIN). Esta Oficina se encargaría de la investigación y haría una evaluación de la queja, dadas las implicaciones respecto a la práctica notarial del abogado querellado.[20]

El 28 de junio de 2011 la Oficina del Procurador General presentó un informe en torno a la queja Núm AB-2006-90. Contenido en dicho informe obra otro rendido por la ODIN de 9 de septiembre de 2009 en el que exponen los hallazgos habidos en la investigación de la queja que esta Curia ordenó. Conforme tales informes, el 10 de noviembre de 2011 este Tribunal dictó Resolución y ordenó la presentación de la Querella contra el letrado. Siguiendo ese mandato, el 17 de mayo de 2012 la Oficina del Procurador General de Puerto Rico procedió a someter la querella que nos atañe en el presente caso.

Así las cosas, el 27 de junio de 2013 emitimos una Resolución en la que nombramos a la Hon. Jeannette Ramos Buonomo, exjueza del Tribunal de Apelaciones, para que, en

---

[19] Véase, *Moción de relevo de sentencia*, Anejo III de la Querella presentada por la Oficina del Procurador General. Véase además, la Resolución de 29 de noviembre de 2005 del TPI, Sala Superior de Mayagüez, declarando ha lugar la *Moción de relevo de sentencia* presentada por el licenciado Toro Iturrino a favor de su cliente, el señor Charles Castro. La misma guarda silencio respecto a la solicitud de inhibición presentada por el doctor Pandolfi.

[20] Véase, *Informe de ODIN*, Anejo XVI de la Querella presentada por la Oficina del Procurador General, pág. 71.

calidad de Comisionada Especial, recibiera la prueba y nos rindiera un informe con las determinaciones de hechos y sus recomendaciones.[21] Cumpliendo con esta encomienda, la Comisionada Especial pautó una Conferencia con antelación a vista para estipular los procedimientos que se llevarían a cabo.[22] En la misma, las partes acordaron preparar una estipulación de los hechos medulares pertinentes a la querella. En vista de ello, las partes emitieron una *Moción informando las estipulaciones de hechos*.[23]

El 29 de agosto de 2013 se celebró la continuación de la Conferencia con antelación a la vista final. En ella, se presentaron testigos de reputación para hablar sobre la reputación personal y profesional del licenciado Toro Iturrino.[24] Ocuparon la silla testifical el Lcdo. Néstor Samuel García Sotelo (licenciado García Sotelo) y el Lcdo. Nasser Awad Taha Montalvo (licenciado Taha Montalvo).[25] El licenciado García Sotelo testificó conocer al querellado en el área personal, profesional y como adversario en el Tribunal desde el 1987. También, expresó que la opinión en

---

[21] En el descargo de su encomienda, la Comisionada Especial tiene la prerrogativa de expedir citaciones y otros mandamientos de la misma manera que si fueran ordenadas directamente por este Tribunal, bajo apercibimiento de desacato.

[22] La misma se llevó a cabo el 1 de agosto de 2013 en el Salón de Sesiones del Tribunal Supremo de Puerto Rico.

[23] Las partes presentaron esta moción el 20 de agosto de 2013.

[24] Esto se llevó a cabo según solicitado por el Lcdo. Harry Padilla Martínez, abogado del querellado.

[25] El licenciado García Sotelo trabajó en el Departamento de Asuntos del Consumidor (DACo) por cuatro años y, posteriormente, entró al Ministerio Público como Fiscal Auxiliar para el Tribunal de Distrito. Se jubiló en abril de 2007, habiendo completado 30 años de servicio. Actualmente tiene práctica privada como abogado. Por otro lado, el licenciado Taha Montalvo ha sido profesor de derecho en la Pontificia Universidad Católica de Puerto Rico. Fue Decano Asociado de la Facultad de Derecho de dicha institución. Enseñó varios cursos, entre ellos el de Ética y responsabilidad profesional. Véase *Minuta de la conferencia con antelación a vista final* del 29 de agosto de 2013.

el área oeste relacionada con el licenciado Toro Iturrino, desde el punto de vista ético y profesional, es que es una persona sumamente honesta. Indicó que jamás ha visto que el querellado desempeñara acto alguno contrario a una buena administración de la justicia y a los Cánones de Ética Profesional. De otra parte, el licenciado Taha Montalvo expresó que conoce al licenciado Toro Iturrino desde la infancia, pues este fue abogado de su padre. Indicó además que en el área oeste la opinión es que el querellado es un abogado serio, competente y extraordinariamente diligente. Culminado el desfile de la prueba, el caso quedó sometido ante la consideración de la Comisionada Especial para rendir el informe a esta Curia.

En atención a ello, la Comisionada Especial rindió su *Informe* el 16 de octubre de 2013. En el mismo, hizo una exposición de los hechos procesales y del trasfondo del caso de marras. Además, puntualizó que la reputación del licenciado Toro Iturrino es excelente y que su historial profesional previo indica que es una persona admirada. Es por esto que, tomando en consideración los factores antes expuestos y los hechos particulares del caso, recomendó como medida disciplinaria una amonestación al querellado.

En ese escenario, el 23 de octubre de 2013 el licenciado Toro Iturrino compareció en una *Moción informativa* en la que aceptó los hechos del informe de la Comisionada Especial. Nuevamente expresó que la situación no se repetirá y que honrará el privilegio que significa

ejercer la profesión de la abogacía. Así las cosas, el caso quedó sometido en sus méritos para la adjudicación por esta Curia el 23 de diciembre de 2013.

Examinado el marco fáctico que antecede, pasemos a exponer el estado de derecho aplicable a la situación ante nuestra consideración.

## II

La querella presentada por la Oficina del Procurador General le imputó al licenciado Toro Iturrino violación al Canon 38 de Ética Profesional, _supra_, y a la Regla 5 del Reglamento Notarial de Puerto Rico, _supra_, al ejercer las funciones de abogado y notario en un mismo pleito.

Como principio del derecho notarial, todo notario está inexorablemente vinculado al estricto cumplimiento de la Ley Notarial de Puerto Rico y a los cánones del Código de Ética Profesional.[26]

El Canon 38 de Ética Profesional, _supra_, establece que:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia.

Al examinar este precepto, debemos tener presente que cada abogado es un espejo en que se refleja la imagen de la profesión y debe actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejerce. _In re Olivera Mariani_, 173 D.P.R. 498, 511 (2008); _In re_

---

[26] Véanse Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2001 _et seq._; 4 L.P.R.A. Ap. IX.

Gordon Menéndez I, 171 D.P.R. 210, 215 (2007). La apariencia de conducta impropia tiene un efecto dañino sobre la imagen, la confianza y el respeto de la ciudadanía hacia la profesión, igual que lo tiene la verdadera "impropiedad ética". In re Gordon Menéndez I, supra, pág. 216; In re Sepúlveda Girón, 155 D.P.R. 345, 361.

La prohibición que subyace del Canon 38, supra, justifica que se sancione a un abogado por apariencia de conducta impropia y no se condiciona su aplicación a la violación de ningún otro canon. In re Olivera Mariani, supra; In re Gordon Menéndez I, supra. Es decir, el Canon 38 opera ex proprio vigore, por lo que cuando un abogado actúa en violación de este, ello amerita nuestra intervención disciplinaria. In re Olivera Mariani, supra, pág. 512.

De otra parte, la Regla 5 del Reglamento Notarial, supra, dispone que:

> La práctica de la profesión de abogado puede ser en algunas ocasiones incompatible con la práctica de la notaría.
>
> El Notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.
>
> El Notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de Notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar del mismo.

Los hechos del caso In re Avilés Cordero y Tosado Arocho, 157 D.P.R. 867 (2002), son muy similares a la controversia que nos ocupa. En el mismo determinamos que el abogado querellado violentó la Regla 5 del Reglamento Notarial, supra. El licenciado Avilés Cordero actuó como representante legal del señor Tosado Arocho para exigir el cumplimiento específico de un acuerdo verbal de compraventa sobre un inmueble. Posteriormente, autorizó varias escrituras donde su cliente fue otorgante. Las mismas recogían el negocio jurídico objeto del pleito. El licenciado Avilés Cordero entendió que su actuación no constituyó violación a la Regla 5 del Reglamento Notarial, supra, pues autorizó las escrituras una vez había cesado su gestión profesional como representante legal. Puntualizó además, que su gestión profesional como notario fue el resultado de una estipulación hecha por las partes y que contó con el aval del foro judicial. Ante estos hechos, concluimos que su conducta era un evidente ejemplo de la incompatibilidad prohibida dispuesta en la Regla 5 del Reglamento Notarial, supra.

Más recientemente, en In re Martínez Almodóvar, 180 D.P.R. 805 (2011), el licenciado Martínez Almodóvar compareció en dos ocasiones como representante legal del señor Cancel Pagán, luego de fungir como notario y otorgar la escritura de compraventa objeto de dos pleitos distintos. En esa ocasión, nuevamente reiteramos que esa

conducta constituía una clara violación a la Regla 5 del Reglamento Notarial, supra.

Similares hechos vimos en el caso de In re Chiques Velázquez, 161 D.P.R. 303, (2004). En esa ocasión, la licenciada Chiques Velázquez, como representante legal del señor Pérez Rivera en un pleito de división de gananciales, autorizó como notario una escritura de compraventa de un bien inmueble perteneciente a la extinta sociedad de gananciales en la que su cliente fue parte. En vista de ello, puntualizamos que la práctica de la abogacía es incompatible con la práctica de la notaría cuando ambas intervenciones de abogado y notario tratan sobre el mismo asunto. Véanse además In re Matos Bonet, 153 D.P.R. 296, 298(2001); In re Colón Ramery, 138 D.P.R. 793, 796 (1995).

Luego de exponer el marco ético que antecede, pasemos a discutir si el querellado infringió las disposiciones del Canon 38, supra, y la Regla 5 del Reglamento Notarial, supra.

### III

Como mencionáramos, en la querella presentada por el Procurador General se le imputó al licenciado Toro Iturrino incurrir en conducta violatoria del Canon 38 del Código de Ética Profesional, supra y de la Regla 5 del Reglamento Notarial, supra. Como parte del proceso disciplinario, la Comisionada Especial rindió su Informe y concluyó que la evidencia demostró que el querellado infringió el referido

precepto ético y la normativa notarial. Le asiste la razón. Veamos.

En In re Colón Ramery, supra, citando a B. & L. Inc. v. P.R. Casting Steeling Corp., 114 D.P.R. 808 (1983), puntualizamos que la prohibición de que un abogado notarice documentos relacionados con un pleito en el cual este lo representaba y que estaba pendiente ante los tribunales responde a que:

> Existe tan manifiesta identidad entre abogado y cliente en lo que respecta al relato de los hechos sobre los cuales se pide remedio en la acción civil y tiene el abogado tanta libertad para escoger el lenguaje en que narrar los hechos a él informados por el cliente, que en cualquier pleito —en el desarrollo de la controversia— puede surgir discrepancia entre abogado y cliente respecto al contenido de la alegación jurada y derivar en procedimientos lesivos a la fe pública de que es custodio el notario. B. & L. Inc. v. P.R. Casting Steeling Corp., supra, pág. 811.

Por esto, hemos pautado que la práctica de la profesión de abogado es incompatible con el ejercicio de la notaría cuando ambas intervenciones traten el mismo asunto. A esos efectos, hemos dispuesto que:

> La expectativa del abogado-notario de, una vez otorgado el documento en el cual actuó como notario, activar una relación de abogado cliente con uno de los otorgantes o de mantener una relación de ese tipo que existía previo al otorgamiento del documento, trastoca la presunción de imparcialidad que protege toda labor del notario y empaña la fe pública de la cual éste es custodio. In re Colón Ramery, supra, págs. 797-798.

Según los hechos estipulados y conforme a la normativa reseñada, no hay ápice de duda de que el licenciado Toro Iturrino ejerció indebidamente la función dual de abogado y notario, al autorizar una escritura sobre un bien inmueble

que era objeto de un litigio en el cual el querellado era abogado. Por otro lado, la apariencia de conducta impropia prohibida por los Cánones de Ética Profesional aumentó al presentarse pocos días después del otorgamiento de la escritura, una moción urgente por parte del querellado. El contenido de esta moción estaba dirigido contra el señor Negrón Mora, uno de los comparecientes de la escritura donde el licenciado Toro Iturrino fungió como notario público.

No podemos ignorar que las acciones del letrado constituyen una violación a la Regla 5 del Reglamento Notarial, supra, y al Cánon 38 de Ética Profesional, supra, al crear una apariencia de conducta impropia. A la luz de estos antecedentes, avalamos la conclusión contenida en el informe presentado por la Comisionada Especial.

Por otro lado, al determinar la sanción disciplinaria que se le impondrá al abogado que haya incurrido en conducta antiética, podemos tomar en cuenta lo siguiente:

> (i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si esta constituye su primera falta y si alguna parte ha resultado perjudicada; (iv) *la aceptación de la falta y su sincero arrepentimiento*; (v) si se trata de una conducta aislada; (vi) *el ánimo de lucro que medió en su actuación*; (vii) resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien *atenuantes o agravantes*, que medien de acuerdo con los hechos. (Énfasis en el original). In re Cotto Luna, 187 D.P.R. 584, 593 (2013) In re Vázquez Pardo, 185 D.P.R. 1031, 1044 (2012).

Vemos, pues, que surge del expediente de autos que la reputación del querellado en su comunidad y entre sus

compañeros profesionales es muy buena. Ello relució en los testimonios de los testigos de reputación que testificaron ante la Comisionada Especial. A esos efectos, el licenciado García Sotelo indicó que el querellado se ha desempeñado siempre respetando la buena administración de la justicia. También, describió al licenciado Toro Iturrino como una persona respetuosa. De otra parte, el licenciado Taha Montalvo expresó que el querellado era una persona trabajadora y diligente. Indicó, además, que le ha sorprendido grandemente la querella presentada en su contra.

Si bien el licenciado Toro Iturrino no tiene historial previo de sanciones éticas, en el presente caso la conducta desplegada está en contravención al marco ético esbozado. Empero, debemos subrayar que el querellado admite que sus actuaciones fueron contrarias a los Cánones de Ética Profesional, _supra_. Es decir, aceptó que cometió un error al otorgar la escritura en controversia. El letrado sostuvo que lo hizo de buena fe y que entendía que se trataba de una intervención neutral.

Concluimos pues, que el letrado infringió el Canon 38 del Código de Ética Profesional, _supra_, y la Regla 5 del Reglamento Notarial, _supra_. En atención a ello, reafirmamos que actuaciones de esta naturaleza no serán toleradas por este Tribunal.

**IV**

Por los fundamentos que anteceden, censuramos enérgicamente al Lcdo. José M. Toro Iturrino. Le apercibimos que de incurrir en conducta impropia en el futuro podrá ser sancionado de forma más severa, incluyendo la suspensión indefinida del ejercicio de la abogacía y de la notaría. Le advertimos, además, que deberá ser más cuidadoso con el ejercicio profesional que desempeña y ceñirse estrictamente a los preceptos que rigen el ordenamiento notarial y el Código de Ética Profesional, supra.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

    José M. Toro Iturrino

                                      CP-2012-10

SENTENCIA

En San Juan, Puerto Rico, a 10 de marzo de 2014.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, censuramos enérgicamente al Lcdo. José M. Toro Iturrino por infringir el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y la Regla 5 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV.

Además, le apercibimos que, de incurrir en conducta impropia en el futuro podrá ser sancionado de forma más severa, incluyendo la suspensión indefinida del ejercicio de la abogacía y de la notaría. Asimismo, le advertimos que deberá ser más cuidadoso con el ejercicio profesional que desempeña y ceñirse estrictamente a los preceptos que rigen el ordenamiento notarial y el Código de Ética Profesional, supra.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Mata y la Juez Asociada señora Rodríguez Rodríguez no intervinieron.

                                    Aida I. Oquendo Graulau
                            Secretaria del Tribunal Supremo