EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2014 TSPR 142 |
| Isabel Sierra Arce | 192 DPR ____ |

Número del Caso:  CP-2012-6


Fecha: 5 de noviembre de 2014


Abogado de la Peticionaria:

          Por derecho propio


Oficina del Procurador General:

          Lcdo. Luis Román Negrón
          Procurador General

          Lcda. Tatiana Grajales Torruella
          Subprocuradora General

          Lcda. Minnie H. Rodríguez López
          Procuradora General Auxiliar


Materia: Conducta Profesional – Censura enérgica por violación a los Cánones 35 y 38 de Ética Profesional


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | Conducta Profesional |
|---|---|---|
| ISABEL SIERRA ARCE | Núm.: **CP-2012-6** | |

*PER CURIAM*

En San Juan, Puerto Rico, a 5 de diciembre de 2014.

La Comisionada Especial nombrada por este Tribunal sometió un Informe en el que concluyó que la Lcda. Isabel Sierra Arce (licenciada Sierra o la querellada) faltó a su obligación de actuar con sinceridad y honradez frente a su cliente, el Sr. Carmelo Rosa Rosario (señor Rosa o el querellante) en violación al Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 35 (2012). Igualmente, encontró que la querellada incurrió en la apariencia de conducta profesional impropia en sus tratos con el querellante, contrario a lo dispuesto en el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38 (2012).

Luego de examinar la información que consta en el expediente y los escritos sometidos por la licenciada Sierra y la Procuradora General a la luz del Derecho aplicable, coincidimos con el criterio de la Comisionada Especial a los efectos de que la licenciada Sierra

infringió los Cánones 35 y 38 del Código de Ética Profesional.

## I

### A. Trasfondo fáctico y procesal

La licenciada Sierra fue admitida al ejercicio de la abogacía el 25 de enero de 1985 y al de la notaría el 19 de febrero de ese año.

La querellada representó al señor Rosa y a varios coherederos en un caso de liquidación de herencia (Civil Núm. **NSCI200301209**). El caudal relicto consistía de una finca de diez cuerdas ubicada en Luquillo, Puerto Rico. El **12 de agosto de 2004** el Tribunal de Primera Instancia dictó Sentencia adjudicando las participaciones a los herederos.[1] El dictamen se notificó a las partes el **1 de septiembre de 2004**.

Días después, el **10 de septiembre de 2004**, mediante escritura pública, la querellada le compró una propiedad residencial al querellante por **$147,000.00**. Los términos de pago no se incluyeron en la escritura pública y la adquisición se realizó sin que mediara ningún tipo de garantía hipotecaria o aseguramiento del pago de la deuda.

La querellada hizo abonos parciales a su deuda los cuales, para el **13 de julio de 2005**, ascendían a **$66,500.00**. Así las cosas, el **3 de marzo de 2006** el señor

---

[1] En el **2004** se sometió ante la ARPE una solicitud para segregar la finca hereditaria en nueve solares a repartirse entre los herederos.

Rosa presentó una demanda en cobro de dinero en contra de la licenciada Sierra (Civil Núm. **NSCI200600184**) mediante la cual le reclamó **$80,500.00** en calidad del balance adeudado del precio de compraventa. La licenciada Sierra contestó la demanda y a su vez interpuso una reconvención exigiéndole al querellante el pago de **$30,830.00** por honorarios de abogado aún pendientes.[2]

Durante el transcurso de los procedimientos ante el Tribunal de Primera Instancia, las partes estipularon que la licenciada Sierra le debía al querellante un total de **$49,670.00,** una vez acreditados los honorarios de abogado adeudados. Esta ofreció como transacción en el pleito cederle al señor Rosa su derecho a un solar de 2,000 metros cuadrados obtenido anteriormente como pago de honorarios de una coheredera.[3] El señor Rosa no aceptó los términos de la oferta de transacción, por lo que el **3 de junio de 2008** el foro de instancia dictó Sentencia a favor del querellante condenando a la licenciada Sierra al pago de **$49,670.00,** más intereses.

### B. Trámite disciplinario

Luego de transcurrido casi un año de emitida la Sentencia en el caso de cobro de dinero, el **23 de abril de**

---

[2]    El querellante y la licenciada Sierra habían pactado honorarios de abogado por $67,500.00.

[3]    Según alude la licenciada Sierra en su escrito, el querellante era dueño de la mayor parte de los solares a segregarse, los cuales colindaban con el terreno cedido a ella por la coheredera.

**2009** el señor Rosa sometió la queja que nos ocupa. En esencia reclamó que la querellada se había aprovechado de la relación abogado-cliente para comprar una residencia de su propiedad y que, a pesar de reconocer la deuda y haberse dictado Sentencia en su contra, esta no había efectuado pago alguno posterior al dictamen judicial. Explicó que la licenciada Sierra preparó la escritura de compraventa y luego comparecieron ante una notario para firmarla.

La querellada respondió a la queja indicando que la prontitud con la cual se dictó Sentencia en el trámite de herencia (Civil Núm. **NSCI200301209**) evidenciaba la efectividad de su intervención como abogada, a pesar de la complejidad del caso. Agregó que se trataba de la partición del caudal de dos causantes fallecidos hacía más de 60 años con múltiples herederos. Según su escrito, desde el 2004 estaba pendiente ante la ARPE la aprobación de la segregación de la finca hereditaria en solares individuales.

Alegó que le compró un inmueble de tipo residencial al querellante en el precio y condiciones que él mismo propuso. Advirtió que este había sido propietario de inmuebles en Puerto Rico, Estados Unidos y República Dominicana. Como comerciante retirado y con inversiones cuantiosas, la compraventa de bienes no le era ajena. Planteó que, inclusive, el querellante había adquirido las participaciones de varios de los coherederos en el

inmueble hereditario, por lo que cinco de los nueve solares pendientes de segregación le serían adjudicados a este.

Según relató, continuó haciendo pagos parciales hasta el **13 de julio de 2005** cuando, luego de haber abonado **$66,500.00** y contrario a lo pactado, el señor Rosa le exigió el saldo total de la deuda, a la vez que se negó a satisfacer los honorarios adeudados. Argumentó que no se había negado a satisfacer la deuda, ya que la oferta de traspasarle al querellante su derecho al solar de 2,000 metros cuadrados continuaba vigente. Por último, solicitó el archivo de la queja por entender que se pretendía relitigar los asuntos ventilados en el caso de cobro de dinero.

El querellante reaccionó al escrito de la licenciada Sierra cuestionando la cantidad de los honorarios de abogado reclamados por esta y alegando fraude. Insistió que no interesaba aceptar el terreno como pago e indicó que la querellada había vendido la casa en **$150,000.00** al año de comprarla, por lo que venía obligada a pagarle su dinero.

La Procuradora General sometió su Informe el **7 de junio de 2011** señalando posibles violaciones a los Cánones 35 y 38 del Código de Ética Profesional. Acogimos su recomendación y, mediante Resolución de 19 de agosto de

2011, le ordenamos someter la Querella correspondiente. Entre tanto, el querellante falleció.**4**

A tenor con lo ordenado, la Procuradora General presentó una Querella en contra de la licenciada Sierra el **20 de marzo de 2012**, imputándole los siguientes cargos:

### Cargo I y II

La Lcda. Isabel Sierra Arce incurrió en conducta que violenta los preceptos enunciados en los Cánones de Ética Profesional 35 y 38, 4 L.P.R.A. Ap. IX, C. 35, C. 38, al comprar una propiedad a su cliente durante la existencia de una relación abogado-cliente aprovechándose de dicha relación de confianza para obtener unas condiciones ventajosas en dicha transacción que se plasmó en un documento apenas nueve días [de] emitida la sentencia en el caso en que lo representaba.

....

La transacción realizada entre las partes durante la existencia de una relación abogado-cliente carente de garantías de pago alguno para con la abogada querellada, el incumplimiento de pago acompañado con el incumplimiento del dictamen emitido por el Tribunal de Primera Instancia, demuestra una clara violación de los Cánones 35 y 38 mencionados. La licenciada Sierra Arce ha incurrido en conducta impropia o su apariencia abusando de la relación de confianza, respeto y lealtad que le debe a su cliente para su propio beneficio en claro menos[p]recio con los deberes éticos que le requiere la profesión legal.

En su Contestación a Querella sometida el **15 de mayo de 2012**, la licenciada Sierra negó las imputaciones en su contra. Entre otras cosas, indicó que: nunca se había negado a pagar su deuda; el querellante estaba tratando de

---

**4**    Según señala la Comisionada Especial en su Informe, para el 3 de diciembre de 2013 el señor Rosa había fallecido hacía ya aproximadamente tres años.

relitigar asuntos adjudicados en el caso Civil Núm. **NSCI200600184** y lo único que correspondía era ejecutar la Sentencia emitida en ese caso. A base de ello, solicitó la desestimación de la Querella.

El **30 de enero de 2013** nombramos a la Hon. Ygrí Rivera de Martínez como Comisionada Especial. El **29 de julio de 2013** la Procuradora General informó haber dialogado con la licenciada Sierra y acordaron someter la disposición del asunto a base del expediente. Eventualmente, ambas partes presentaron sendas mociones en apoyo a sus respectivas posiciones y la Comisionada Especial sometió su Informe el **14 de febrero de 2014.**

En su Informe, la Comisionada Especial determinó que el negocio jurídico entre las partes estuvo ligado a su relación de abogado-cliente. Expresó que la cercanía entre la compraventa y la Sentencia emitida en el caso de partición de herencia, junto al hecho de que no se pactó garantía de pago alguna, evidenció la confianza que el querellante depositó en su abogada producto de su relación profesional. Esto creó una apariencia de aprovechamiento por parte de la licenciada Sierra. También la Comisionada Especial aludió a la falta de pago y la insistencia de la querellada en saldar la deuda cediendo el solar que recibió como pago de honorarios de una coheredera, a pesar del rechazo del querellante. A base de estos hechos, concluyó que la querellada violó los Cánones 35 y 38 del Código de Ética Profesional.

## II

## A. Comisionada Especial

A pesar de que no venimos obligados a sostener las determinaciones de hechos de un Comisionado Especial, estas merecen nuestra deferencia salvo que se demuestre pasión, prejuicio, parcialidad o error manifiesto en su apreciación de la prueba. No obstante, nuestra deferencia se limita a situaciones en las que esos hallazgos descansan en prueba testifical, ya que es entonces cuando, similar al juez de instancia, el Comisionado Especial tiene la ventaja de poder aquilatar de primera mano la credibilidad de los testigos. Por el contrario, cuando sus determinaciones están apoyadas en prueba documental que forma parte del expediente, nos encontramos en igual posición que el Comisionado Especial para evaluarla y por consiguiente adoptar, modificar o rechazar el informe. In re Josué Daniel de León Rodríguez, 2014 TSPR 29, 190 DPR ___ (2014); In re García Ortiz, 187 DPR 507 (2012).

En esta ocasión se sometió el asunto disciplinario a base del expediente, por lo que no hubo necesidad de celebrar una vista evidenciaria. Habida cuenta de que las determinaciones de la Comisionada Especial están basadas exclusivamente en la prueba documental, estamos facultados para realizar un examen independiente de la prueba y disponer del proceso según nuestro mejor entender, cónsono con el Derecho aplicable.

**B. Canon 35 del Código de Ética Profesional**

El Canon 35 del Código de Ética Profesional, específicamente, le impone a todo miembro de la profesión legal el deber de proceder siempre con sinceridad y honradez ante los tribunales, para con sus representados y en sus relaciones con los compañeros de labor.[5] No se considera sincero y honrado el adoptar medios incompatibles con la verdad.

La profesión jurídica está predicada en la búsqueda y defensa de la verdad. Por lo tanto, resulta inherentemente contrario a su función el que un abogado se desvíe de su obligación de ser sincero y honrado en toda faceta en que se desempeñe, ya sea en su vida profesional o privada. In re González Cardona, 179 DPR 548 (2010). "La verdad es un atributo inseparable del ser abogado y, sin esta, la profesión jurídica no podría justificar su existencia. […]" In re Cuevas Borrero, 185 DPR 189, 201 (2012); In re Santiago Tirado, 173 DPR 786 (2008); In re Meléndez Figueroa, 166 DPR 199 (2005).

**C. Canon 38 del Código de Ética Profesional**

Como parte de sus postulados, el Canon 38 del Código de Ética Profesional compele a los abogados a afanarse por

---

[5]     En lo pertinente, el Canon 35 del Código de Ética Profesional reza como sigue:

>        La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada. […]

preservar el honor y dignidad de la profesión legal.**6** Comportarse a la altura de los principios éticos reseñados constituye piedra angular de la confianza que genera el hecho de pertenecer a esta ilustre profesión. Los letrados deben tener presente que su conducta no se mide con los mismos parámetros que a un individuo particular. Por el contrario, cada abogado debe estar consciente que es un espejo en que se refleja la imagen de la profesión. Ello requiere que se desempeñe siempre con el más escrupuloso sentido de responsabilidad que impone la función social que ejerce. In re Josué Daniel de León Rodríguez, *supra*; In re Enrique Reyes Coreano, 2014 TSPR 51, 190 DPR ___ (2014); In re José M. Toro Iturrino, 2014 TSPR 44, 190 DPR ___ (2014); In re Falcón López, 189 DPR 689 (2013). Dicho comportamiento digno y honorable es exigible tanto en su vida privada como en el desempeño de su profesión. In re Cotto Luna, 187 DPR 584 (2012); In re Falcón López, *supra*.

Asimismo, el Canon 38 del Código de Ética Profesional expone a los abogados a procesos disciplinarios en situaciones de apariencia de conducta profesional

---

**6**    En lo atinente a este caso, el Canon 38 del Código de Ética Profesional dispone:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. […]

> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. […]

impropia. In re Reyes Coreano, *supra*; In re Ferdinand Vargas Velázquez, 2014 TSPR 49, 190 DPR ___ (2014). Y es que la apariencia de conducta profesional impropia igualmente lacera la imagen, la confianza y el respeto que nuestra sociedad deposita en la profesión y en las instituciones de la justicia. In re José M. Toro Iturrino, *supra*; In re Santiago Tirado, *supra*; In re Meléndez Figueroa, *supra*.

En consonancia con lo provisto en ese canon, compete a todo abogado apartarse de conducta que pueda suponer un conflicto real o aparente entre sus intereses personales y los de su cliente. In re Morell, Alcover, 158 DPR 791 (2003). Su deber ético es lucir siempre puro y libre de consideraciones ajenas a su lealtad profesional y evitar que sus actuaciones den margen a la más leve sospecha de que promueve intereses propios opuestos a los de su cliente. Íd.; In re Toro Cubergé, 140 DPR 523 (1996).

## III

En este caso se encuentran presentes circunstancias muy particulares desde el punto de vista ético.

Primeramente, por la cercanía entre la fecha de notificación de la Sentencia y la compraventa podemos deducir que las conversaciones conducentes al negocio en controversia necesariamente comenzaron **antes** de que se resolviera el litigio sucesoral. Es decir, cuando todavía les unía una relación de abogado-cliente.

Si bien es cierto que al momento en que se perfeccionó la compraventa había recaído Sentencia disponiendo del asunto que les ataba profesionalmente, aun ese dictamen no había advenido final y firme. En otras palabras, el vínculo se encontraba latente. Existía, por lo tanto, la posibilidad de que, con posterioridad a ese momento, la licenciada Sierra tuviese que rendir alguna labor a favor del querellante.

Aparte de la proximidad en tiempo, el modo en que se tramitó el negocio y los términos acordados ciertamente dan margen a una apariencia de conflicto de intereses entre la querellada y el querellante. Sobre este particular, llaman la atención dos aspectos significativos de la manera en que se efectuó la compraventa, en vista de la cantidad de dinero involucrada.

Para comenzar, los términos de pago no se redujeron a un documento escrito. El acuerdo fue uno verbal y su contenido quedó estrictamente entre los dos.[7] Esto, de por sí, provoca incertidumbre sobre la lealtad de la querellada en el trámite. ¿Qué razón válida podía existir para mantener esta información en secreto?

Igualmente, crea suspicacia el que un propietario esté dispuesto a vender una residencia en $147,000.00 sin procurar ningún tipo de garantía de pago en el proceso. Precisamente, esta situación le permitió a la querellada

---

[7] A pesar de que ambas partes confirmaron tener un acuerdo privado sobre este particular, ninguna reveló sus detalles durante el trámite disciplinario.

vender la residencia aproximadamente al año de comprada y retener para sí el importe total del negocio.

Ante este escenario fáctico, surgen dudas sobre la equidad de los términos de la transacción para efectos del querellante, en calidad de vendedor, ya que la falta de garantía únicamente beneficiaba a la licenciada Sierra. De otra parte, la ausencia de un documento donde consten las condiciones de pago aumenta la inquietud sobre la imparcialidad de la abogada en el curso de la negociación y eventual compraventa.[8]

La licenciada Sierra presentó como defensa el hecho que el querellante era un comerciante retirado que había tenido propiedades en Estados Unidos y en la República Dominicana, aparte de Puerto Rico. Además, adquirió de los miembros de la sucesión cinco de los nueve solares pendientes de segregación. Coincidimos con su planteamiento de que esto implica que el señor Rosa era una persona acostumbrada a hacer negocios de cierta envergadura y a manejar la compraventa de propiedades. No obstante, precisamente por ser el querellante experimentado en materia de compraventa de propiedades es que persiste la preocupación de que la licenciada Sierra se aprovechó de la relación que le unió profesionalmente a su cliente. Este aceptó condiciones desfavorables a sus

---

[8]     El hecho de que el negocio se haya elevado a escritura pública no disipa del todo estas dudas.  El rol del notario no se extiende a aconsejar a una de las partes sobre las bondades o desventajas de los términos del acuerdo.  Esta responsabilidad es propia del abogado de la parte.

intereses, tales como: términos de pago verbales y sin colateral de pago, algo poco común entre extraños.

Podemos concluir, por lo tanto, que la prueba disponible denota que la licenciada Sierra no actuó con prudencia en su negocio con el querellante, apartándose de su obligación de lucir imparcial en todos sus tratos. De entrada, la relación abogado-cliente no había terminado del todo cuando las partes suscribieron la escritura de compraventa.

Además, la querellada fue descuidada al no asegurarse de que todos los términos del acuerdo constasen por escrito. Lo anterior justifica una inferencia de apariencia de parcialidad, al dar la impresión de que la licenciada Sierra se aprovechó de su cliente en el proceso de compraventa.

Por último, a falta de explicación que indique lo contrario, podemos deducir que la única razón para que el señor Rosa accediese a renunciar a una garantía de pago fue precisamente por la confianza depositada en su abogada como resultado del vínculo profesional que les unió.

A base de lo anterior, entendemos que el negocio de compraventa, según se concretizó, provocó una situación de apariencia de conducta profesional impropia contraria al Canon 38 del Código de Ética Profesional.

Igualmente acogemos la determinación de la Comisionada Especial a los efectos de que la querellada faltó a su obligación de actuar con sinceridad y honradez para con el

señor Rosa según consignada en el Canon 35 del Código de Ética Profesional.  A tono con la discusión que antecede, resulta forzoso concluir que la licenciada Sierra no fue honesta en sus tratos con el querellante al agenciar unos términos y condiciones de compraventa que, lejos de proteger los intereses de su cliente, favorecían los suyos propios.

**IV**

Tomando en consideración que es la primera queja que se presenta contra la licenciada Sierra en su trayectoria de casi 30 años como abogada y quien, aparte de este caso, ha tenido un expediente intachable, le censuramos enérgicamente.  Se le advierte a la querellada que cualquier transgresión futura a las normas mínimas de conducta que impone el Código de Ética Profesional conllevará una sanción disciplinaria más severa.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| IN RE: | | *Conducta Profesional* |
| | **Núm.** <u>CP-2012-006</u> | |
| **ISABEL SIERRA ARCE** | | |

SENTENCIA

En San Juan, Puerto Rico, a 5 de diciembre de 2014.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia y tomando en consideración que es la primera queja que se presenta contra la Lcda. Isabel Sierra Arce en su trayectoria de casi 30 años como abogada y quien, aparte de este caso, ha tenido un expediente intachable, le censuramos enérgicamente.

Se le advierte a la licenciada Sierra que cualquier transgresión futura a las normas mínimas de conducta que impone el Código de Ética Profesional conllevará una sanción disciplinaria más severa.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez no intervinieron.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo