EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:

Jane Hoffmann Mouriño | 2015 TSPR 153

194 DPR ____ |

Número del Caso: CP-2013-30

Fecha: 12 de noviembre de 2015

Abogados de la Querellada:

Lcdo. Virgilio Mainardi Peralta
Lcdo. José A. Rivera Rodríguez

Oficina de la Procuradora General:

Lcda. Karla Pacheco Álvarez
Subprocuradora General

Lcda. Minnie H. Rodríguez López
Procuradora General Auxiliar

Materia: Conducta Profesional - Censura enérgica por violación al Canon 38 de Ética Profesional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: Jane Hoffmann Mouriño

CP-2013-30

PER CURIAM

En San Juan, Puerto Rico, a 12 de noviembre de 2015.

Nos corresponde determinar si una abogada actuó de manera tal que se apartó de la responsabilidad ética de efectuar una cabal aportación en ánimo de procurar una mejor administración de la justicia, conforme al Canon 38 de Ética Profesional, 4 LPRA, Ap. IX. Una vez más, reafirmamos que la buena marcha de los procesos judiciales no solo es responsabilidad de los funcionarios que día a día laboran en las salas de los tribunales, sino de todos los abogados y abogadas que ante este foro juramentaron desempeñar esta noble profesión.

"[C]ada abogado es un espejo en el que se refleja la imagen de la profesión"[1] por lo que debemos puntualizar que en la abogacía se refleja

---

[1] In re Sierra Arce, res. el 5 de diciembre de 2014, 192 DPR ___, 2014 TSPR 142, en la pág. 11.

también la imagen de la justicia. No se pueden minimizar los deberes éticos, ya que permitirlo incide sobre la fe y la confianza en nuestro sistema judicial. Por ello, los abogados y las abogadas deben tener presente que su conducta no se mide con los mismos parámetros con los que se mide la de un ciudadano particular. Al ser así, este Tribunal tiene el firme compromiso de fortalecer y velar por el cabal cumplimiento de los principios que rigen la ética profesional.

Pasemos, pues, a exponer los hechos que dieron lugar a la querella que nos ocupa.

I

La licenciada Jane Hoffmann Mouriño (la querellada) fue admitida al ejercicio de la abogacía el 1 de noviembre de 1978 y a la práctica de la notaría el 30 de ese mismo mes. Esta, figuró como parte de la representación legal de la defensa en una vista de determinación de causa para arresto que se celebró el 24 de enero de 2011 en la Sala de Investigaciones del Centro Judicial de San Juan, presidida por la Hon. María de los Ángeles Rabell Fuentes. Trascendió que luego de que el Ministerio Público mostrara y entregara cierta prueba de cargo a los representantes legales allí presentes, se extravió una prueba de campo y el informe del inventario de un vehículo de motor, conocido como el documento "PPR 128".

Esta situación provocó que el 10 de febrero de 2011 la entonces Jueza Administradora de la Región Judicial de San

Juan, Hon. Isabel Llompart Zeno, presentara ante esta Curia un escrito de comparecencia especial refiriendo a nuestra atención la investigación que se realizó sobre el incidente. Allí mencionó que los abogados que estuvieron presentes en dicha vista fueron la licenciada Jane Hoffmann Mouriño y los licenciados Gabriel Hernández González y Wilfredo Díaz Narváez. Con el escrito acompañó varios documentos, a saber: el Informe de Incidente suscrito por la Jueza Coordinadora de Sala de Investigaciones, Hon. Ladi V. Buono De Jesús; el Informe preparado por la Juez Municipal María de los Ángeles Rabell Fuentes; los respectivos informes de tres alguaciles y una moción suscrita por la fiscal Ítala Rivera Buonomo.

Así las cosas, el 11 de marzo de 2011 referimos este escrito a la Oficina de la Procuradora General para que investigara si los abogados allí mencionados incurrieron en violaciones a los Cánones de Ética Profesional. Consecuentemente, el 25 de octubre de 2011 la Procuradora General presentó un primer Informe, y en cuanto a la querellada, detalló lo siguiente:

> De las entrevistas realizadas podemos concluir que, el licenciado Hernández no supo de la prueba extraviada luego de la vista y que solamente tuvieron conocimiento del hecho en dicho momento los licenciados Hoffmann y Díaz. Estos negaron tener dicha prueba cuando se les requirió que verificaran entre sus papeles pero, ninguno de ellos verificó nada antes de negar el hecho.

> Señalamos que, conociendo de la situación surgida la licenciada Hoffmann opta por retirarse del lugar.

[…]

En cuanto a la licenciada Hoffmann, esta conoció que se extravió cierta prueba y optó por no revisar sus pertenencias para ver si por error se había ido con sus papeles. Simplemente se limitó a indicar que no la tenía.[2]

A pesar de haber realizado esas expresiones, entendió que no había prueba de conducta irregular de parte de los abogados involucrados. Ante ello, el 30 de noviembre de 2011 le ordenamos a la Procuradora General que reinvestigara los antecedentes fácticos que dieron lugar a la queja, específicamente la conducta de la licenciada Hoffmann. Así, el 18 de octubre de 2012 recibimos el Informe Complementario, en el que se puntualizó lo siguiente:

> nos reiteramos en el contenido del Informe rendido en cuanto a la conducta desplegada por la licenciada Hoffmann Mouriño, quien se negó a verificar sus documentos ausentándose rápidamente del área de recepción.[3]

De esta forma, concluyó que la conducta de la licenciada Hoffmann pudo ser violatoria al Canon 38 del Código de Ética Profesional.[4] En consecuencia, ordenamos que se presentara la correspondiente querella. Subsiguientemente, se presentó la misma el 21 de noviembre de 2013 imputándole a la letrada los siguientes cargos.

### Cargo I y II

> La licenciada Jane Hoffmannn Mouriño incurrió en conducta que atenta contra el Criterio General de la Parte II de los Cánones de Ética Profesional, 4 LPRA Ap. IX en cuanto a los deberes que tiene todo abogado para con los tribunales y en específico el deber de velar por

---

[2] Informe del Procurador General de 25 de octubre de 2011, pág. 3.
[3] Informe Complementario del Procurador General, pág. 1.
[4] 4 LPRA Ap. IX.

el desenvolvimiento adecuado y desarrollo del proceso judicial del cual es parte esencial. Además, incurrió en conducta que violenta los preceptos mínimos enunciados en el Canon 38 de Ética Profesional donde se establece el deber de todo abogado en esforzarse al máximo de su capacidad en la exaltación del honor y dignidad de su profesión y no incurrir en conducta impropia o la apariencia de la misma. El asunto traído a la atención del Honorable Tribunal Supremo en donde surge una situación seria y anómala durante una vista y el abogado opta por retirarse sin realizar gestión o acto alguno para clarificar la situación surgida crea sin duda alguna la apariencia y/o conducta indebida que contempla el Canon 38. (Énfasis suprimido).[5]

A juicio de la Procuradora, luego de que la agente investigadora Keila Serrano (agente Serrano) les comunicara a los abogados que se habían extraviado los documentos, la querellada indicó que no los tenía y se retiró del lugar sin verificar sus pertenencias. Según su apreciación, esta incumplió con su deber como funcionaria del tribunal de velar porque los procesos fueran íntegros y libres de toda duda. La licenciada Hoffmannn negó todas esas imputaciones al contestar la Querella.[6] Alegó que examinó sus pertenencias en presencia de un alguacil y de la agente Serrano y que no tenía los documentos. Además, planteó que la Jueza que presidió la vista no le ordenó entrar a la sala para aclarar ese asunto.

Tras examinar estas comparecencias, nombramos como Comisionada Especial a la Hon. Crisanta González Seda, ex Jueza del Tribunal de Primera Instancia, para que celebrara una vista y nos rindiera un informe. Después de varios

---

[5] Querella, pág. 2.
[6] Véase, Contestación a la queja, presentada el 18 de febrero de 2014.

trámites, las partes presentaron un Informe de Conferencia con Antelación a la Vista[7] en el que estipularon cierta prueba, a saber: (1) las declaraciones escritas de los alguaciles Antonio Santos Valentín, Abdiel Rodríguez Nieves y Mirka Esteva Tirado; (2) el Informe de la Juez Municipal María de los Ángeles Rabell Fuentes y (3) los videos de seguridad de la Sala de Investigaciones y de otros perímetros del tribunal.[8]

Eventualmente, se celebró la vista el 11 de septiembre de 2014. Allí la Procuradora General presentó el testimonio de la Hon. Ladi V. Buono De Jesús, los documentos que acompañó con su Informe y la prueba estipulada. Por su parte, la querellada presentó su testimonio y parte de los videos estipulados por las partes, específicamente, la grabación de lo ocurrido luego de la vista de determinación de causa para arresto.[9]

Según las determinaciones de hechos que formuló la Comisionada, durante la vista de determinación de causa para arresto la agente Serrano entregó un grupo de documentos a los abogados de defensa, los cuales se fueron ubicando en un podio. Para fines de la discusión de este caso, es meritorio transcribir algunas de las determinaciones de hechos que constan en el Informe de la

---

[7] Véase, Informe de Conferencia con Antelación a la Vista presentado el 22 de agosto de 2014.
[8] Estas declaraciones constan en los anejos del escrito de Comparecencia especial que presentó la Hon. Isabel Llompart Zeno.
[9] La Oficina de la Procuradora General solicitó a la Comisionada Especial que observara el video de lo ocurrido el día de los hechos porque no lo proyectaría durante la vista. Informe de la Comisionada Especial, pág. 5.

Comisionada relacionadas a los eventos que ocurrieron después de esto. Veamos.

A partir de las 11:56 de la noche, ocurren los siguientes hechos: los documentos están en el podio de los abogados y el licenciado Hernández vuelve al lugar frente a la cámara donde se encontraba la querellada. Mientras la querellada continuaba hablando hacia la jueza, el licenciado Narváez busca en su maletín y saca lo que aparenta ser una agenda.[10]

La querellada se retira del podio, coge los documentos que entregó la agente y que se encuentran en el podio, los observa, los dobla y los coloca en una carpeta de color oscuro. También coloca su libreta y cierra la carpeta, manteniendo la carpeta en sus manos. El licenciado Díaz Narváez se acerca al podio que está vacío y conversa con la querellada. […][11]

El licenciado Díaz Narváez se retira al podio, cierra su agenda y coloca la libreta en ésta, mientras la querellada recoge su cartera y el licenciado Hernández toma posesión de la carpeta que contiene los documentos guardados por la querellada y la libreta de notas de ésta. Todos abandonan la sala.[12]

La agente investigadora entró a la sala y el alguacil le devolvió varios documentos. Esta habló hacia el estrado y luego al otro agente que se encontraba a su lado. Miró a su alrededor y hacia el podio y salió de la sala.[13]

Conforme surge del video presentado por la querellada que contiene los incidentes en la sala de espera, el licenciado Hernández se mantuvo sentado en un banco, con la carpeta que contenía los documentos y libreta que guardó la querellada durante el tiempo que la agente investigadora estuvo inquiriendo respecto a los documentos extraviados.[14]

Ni la agente investigadora, ni la querellada se dirigieron al licenciado Hernández a

---

[10] Determinación de hechos núm. 15, Informe de la Comisionada Especial, pág. 10.
[11] Determinación de hechos Núm. 16, Id.
[12] Determinación de hechos Núm. 17, Id., a la pág. 11
[13] Determinación de hechos Núm. 18, Id.
[14] Determinación de Hechos Núm. 19, Id.

solicitarle que abriera la carpeta, donde hubieran localizado los documentos allí guardados por la querellada.[15]

La querellada mostró su cartera a la agente, pero no mostró el contenido de la carpeta, que incluía los documentos que ella observó, dobló y guardó, en la sala donde se celebró la vista. Aunque la querellada testificó que utilizaba esa cartera que tenía esa noche y que trajo a la vista, como maletín, conocía que no guardó en esta los documentos, ni su libreta, sino en la carpeta que entregó al licenciado Hernández, por lo que mostrar la cartera era un ejercicio que no aportaba nada a solucionar la situación de desaparición de los documentos.[16]

De acuerdo a la Comisionada, si bien es cierto que la agente investigadora entregó los documentos a los abogados, durante la vista no se identificó el contenido específico de los que la licenciada Hoffmann guardó en su carpeta.[17] La agente Serrano, quien tenía conocimiento personal sobre este asunto, no compareció a la vista como testigo. Por su parte, la licenciada Hoffmann tampoco testificó en cuanto al hecho incontrovertible de haber guardado unos documentos en su carpeta, ni las razones para no buscarlos y devolverlos.[18] Tras examinar la prueba, la Comisionada concluyó que la conducta desplegada por la licenciada Hoffmann violó el Criterio General de los Cánones de Ética sobre las actuaciones de los abogados y el Canon 38, supra.

Contando con el beneficio del Informe de la Comisionada y las comparecencias de las partes, pasamos a determinar si la querellada cometió las faltas imputadas.

---

[15] Determinación de hechos Núm. 20, Id.
[16] Determinación de hechos Núm. 21, Id., a las págs. 11-12.
[17] Determinación de hechos Núm. 25, Id., a la pág. 13.
[18] Id.

Primero, expongamos el marco jurídico aplicable a las controversias ante nuestra consideración.

## II

Siempre hemos reiterado que la abogacía cumple una función de gran envergadura en la consecución de la Justicia, por lo que un abogado no tiene solamente el rol de ser el defensor de su cliente.[19] Esta función podría aparentar ser amplia y general, pero para que el abogado y la abogada puedan cumplir con ello es que existen los Cánones de Ética que regulan nuestra profesión, aspirando a formar profesionales del Derecho íntegros.[20] Tal como reseñáramos hace unos pocos años,

> no podemos perder de vista que la abogacía cumple una función social de notable importancia por su aportación imprescindible a la realización de la Justicia. El abogado, además de defensor de su cliente, **es colaborador de la Justicia.** (Énfasis nuestro).[21]

Nos dicen los tratadistas que la noción ideal del abogado tiene dos ámbitos: uno que se enmarca en el ejercicio particular e individual de la profesión -que se limita a la relación del abogado con su cliente- y otro que se relaciona al rol social de la abogacía.[22] Este segundo ámbito se caracteriza por promover "intereses sociales e institucionales al viabilizar la concreción de una sociedad más justa y al salvaguardar la estima pública de

---

[19] In re Marini Roman, 165 D.P.R. 801, 807 (2005).
[20] Steidel Figueroa S., Ética y responsabilidad disciplinaria del abogado, Publicaciones JTS, 2010, pág. 12.
[21] In re Hoffmann Mourino, 170 DPR 968, 980 (2007).
[22] Steidel Figueroa, op cit., en la pág. 12.

las instituciones de justicia y en la clase profesional".[23] Es dentro de este último ámbito que podemos catalogar la obligación específica del Canon 38 de Ética Profesional, supra, por la cual se presentó la Querella que nos ocupa contra la licenciada Hoffmann Mouriño. En su parte pertinente, el Canon 38, supra, dispone:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. **En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia.** (Énfasis nuestro).

Como vemos, el Canon precitado impone sobre los abogados y las abogadas una obligación de ejercer actos afirmativos con el fin de lograr que la administración de la justicia opere adecuadamente. Nótese que para ello requiere que los abogados y las abogadas realicen una aportación que describe como *cabal*. El Diccionario de la Real Academia española nos define este adjetivo como algo que es "completo, exacto, perfecto".[24] De manera que ante la alegación de que un abogado o abogada infringió esta parte específica del Canon 38, supra, corresponde entonces evaluar las circunstancias particulares y específicas dentro de las cuales se desarrolló la alegada infracción. En otras palabras, el escenario ante el cual el abogado o la abogada falló en proveer esa aportación cabal en aras de la sana

---

[23] Id. (Citas omitidas).
[24] Diccionario de la Real Academia Española, disponible en: http://dle.rae.es/?w=cabal#/?w=cabal&o=h.

administración de la justicia. En este caso debemos auscultar si las acciones de la licenciada Hoffmann fueron adecuadas a la situación que ocurrió cuando se extravió parte de la prueba que se presentó en la vista y ver si pueden catalogarse como una "cabal aportación" con el fin de aclarar lo ocurrido.

Pasemos a discutir esta controversia.

### III

Al examinar la Querella que presentó la Procuradora vemos que a la licenciada Hoffmann se le imputaron dos cargos conjuntamente: uno por violar el Criterio General de la Parte II de los Cánones de Ética Profesional y otro por infringir el Canon 38, supra. Sin embargo, ambos están relacionados con una misma conducta, esta es, que ante la situación anómala de la evidencia extraviada la querellada optó por retirarse del lugar sin realizar gestión o acto alguno para clarificar ese incidente. En específico, el Cargo de la querella se fundamenta en lo siguiente:

> El asunto traído a la atención del Honorable Tribunal Supremo en donde surge una situación seria y anómala durante una vista y el abogado opta por retirarse sin realizar gestión o acto alguno para clarificar la situación surgida crea sin duda la apariencia **y/o conducta indebida que contempla el Canon 38.** (Énfasis nuestro).[25]

Luego de estudiar el expediente de este caso concluimos que la licenciada Hoffmann infringió el Canon

---

[25] Querella, pág. 2.

38, supra, aunque no por las razones consignadas en el Informe de la Comisionada Especial. Nos explicamos.

La Comisionada Especial señaló en su informe que "el hecho de tomar para sí un documento que forma parte del expediente fiscal, sin que le fuera autorizado, es conducta impropia que violenta los requerimientos del Canon 38, supra".[26] Primero, es ineludible aclarar que los cargos imputados en la Querella no se refieren a la conducta que desplegó la letrada durante la vista que se celebró en la sala de investigaciones, sino a la que asumió o dejó de asumir luego de que concluyó ese procedimiento judicial. Es decir, una vez fue advertida sobre los documentos extraviados. A la querellada no se le imputó en la Querella conducta impropia por el hecho de haber tomado unos documentos durante la vista y guardarlos en una carpeta personal. Al ser así, la acción de la querellada que está en controversia es si se retiró del Tribunal de San Juan sin esforzarse en ayudar a aclarar la situación de la evidencia extraviada, cónsono con el deber de procurar que ese proceso judicial del que participó fuera íntegro en busca de una sana administración de la justicia.

Debemos recordar que al ser admitido formalmente a la profesión, el abogado y la abogada adquieren un interés propietario sobre su licencia profesional, por lo que la imposición de una medida disciplinaria requiere que se satisfagan las garantías constitucionales del debido

_____

[26] Informe de la Comisionada, pág. 22.

proceso de ley.[27] De haber entendido la Procuradora General que la querellada incurrió en alguna violación por el hecho de haber guardado unos documentos en una carpeta, así lo habría consignado en su Querella y hubiese presentado prueba al respecto. Pero eso no fue lo que ocurrió en este caso. Por lo tanto, no nos corresponde pasar juicio sobre esos hechos específicos.

Ahora bien, conforme a las determinaciones de hechos que realizó la Comisionada Especial, podemos concluir que la conducta que desplegó la licenciada Hoffmann luego de que fuera avisada de la situación del extravío de los documentos se alejó de la responsabilidad que tiene todo abogado y abogada como funcionario del tribunal.

Según surge de las declaraciones escritas de los alguaciles auxiliares que fueron estipuladas por las partes y de las determinaciones de hechos de la Comisionada, las últimas personas en tener en sus manos la prueba presentada por el Ministerio Público fueron los representantes legales presentes en la vista de determinación de causa para arresto.[28] Según el Alguacil Auxiliar Antonio Santos Valentín, la noche de los hechos la querellada insistió en que le había entregado los documentos extraviados, y este "le refut[ó] que dichos documentos nunca [le] fueron

---

[27] Steidel Figueroa, op cit., pág. 342.
[28] Véanse, Informes de los Alguaciles Auxiliares Miurka Esteva Tirado, Antonio Santos Valentín y Abdiel Rodríguez Nieves. Apéndice de la Comparecencia Especial de la Hon. Isabel Llompart Zeno.

entregados".[29] Esto lo confirmó el Alguacil Abdiel Rodríguez Nieves.[30]

Ante ello, queda claro que la querellada conocía que existía una discrepancia en cuanto a quién tenía los documentos. La querellada sostuvo que los había entregado al alguacil de sala, mientras, este último afirmó lo contrario. Esto debió despertar en la licenciada Hoffmann un sentido de más cautela. Su posición durante el curso de este proceso disciplinario ha sido que mostrar el contenido de su cartera fue suficiente para cumplir con su responsabilidad como funcionaria del tribunal de procurar que los procesos marcharan de forma íntegra y adecuada. No coincidimos con su parecer.

Si bien no es correcto afirmar que la licenciada Hoffmann se marchó del Tribunal sin tomar **ninguna** acción, la interrogante debe ser si la acción que tomó fue suficiente a la luz de la totalidad de las circunstancias, de manera que pueda catalogarse como una "cabal aportación" para una mejor administración de la justicia. Según se detalló en el Informe de la Comisionada Especial, y según admitido por la propia querellada, al ser cuestionada sobre la situación la licenciada se limitó a revisar su cartera para ver si encontraba los documentos. Pero según la prueba estipulada, la querellada conocía que existían versiones encontradas en cuanto a si esta le había entregado o no dichos documentos al alguacil. Esto, además del hecho

---

[29] Véase, Informe del Alguacil Auxiliar Antonio Santos, Id.
[30] Véase, Informe del Alguacil Abdiel Rodríguez Nieves, Id.

incontrovertido de que durante la vista la agente investigadora les entregó a la querellada y a los otros abogados allí presentes la evidencia documental.

Así pues, considerando todos los eventos ocurridos, la licenciada Hoffmann debió ser más prudente ante lo que había acontecido. Conociendo esta situación, y ante el hecho indiscutible de que había tenido en sus manos la evidencia documental que presentó el Ministerio Público, su deber era ayudar a solucionar esa situación con actos afirmativos que fueran más allá de meramente buscar en el interior de su cartera, que es la acción que esta misma afirmó haber realizado. Según surgió del video que examinó la Comisionada, la letrada tomó unos documentos durante la vista y los guardó en una carpeta. Las motivaciones de esas acciones no están en controversia en esta Querella. Tampoco sabemos el contenido exacto de esos documentos. Pero ante toda la cadena de eventos, una actuación correcta hubiese sido examinar no solo su cartera, sino los maletines, carpetas, agendas y otras pertenencias que había manejado durante la vista y así colaborar en el esclarecimiento de ese incidente.

Recordemos que los Códigos de Ética profesional "son producto de un consenso más o menos generalizado sobre cómo debe actuar un profesional en un contexto en particular".[31] Por eso hemos afirmado que los Cánones de Ética establecen las normas mínimas de conducta que rigen a los miembros de

---

[31] Steidel Figueroa, op cit., a la pág. 11.

la profesión legal en el desempeño de su labor.[32] Ciertamente, el carácter imperativo de los deberes enmarcados en el Canon 38, supra, no pueden pasar desapercibidos como si fueran un concepto etéreo. Por el contrario, el abogado y la abogada deben esforzarse en trabajar al máximo de su capacidad para que ese concepto de Justicia no quede manchado. Pues ya hemos mencionado en ocasiones previas que "nada bueno augura a nuestra sociedad si perdemos el respeto hacia nuestras instituciones, máxime cuando se trata de una institución que su razón de existir es hacer justicia".[33]

Esto cobra gran relevancia ante situaciones que atenten contra esa buena marcha judicial, como la que ocurrió en este caso. El hecho de que se extravíen piezas de evidencia durante un proceso judicial no es un asunto frívolo y está revestido de un alto interés para la sana administración de la justicia. Es una situación de serias implicaciones que requería mucho más esfuerzo por parte de la licenciada Hoffmann. Es evidente que la querellada incumplió con los estándares que se le exigen a un abogado en una situación de esta naturaleza, por lo que no cumplió con su deber de hacer "su propia y cabal aportación hacia la consecución de una mejor administración de la justicia". Canon 38, supra.

---

[32] In re Reyes Coreano, 190 DPR 735, 750 (2014).
[33] In re Guzmán Guzmán, 181 D.P.R. 495, 514 (2011).

IV

Por los fundamentos expuestos, **censuramos enérgicamente las acciones de la licenciada Hoffmann Mouriño y le apercibimos que de repetirse otra conducta que incida sobre las normas éticas que rigen la abogacía este Tribunal podría imponerle sanciones disciplinarias más severas, incluyendo la suspensión del ejercicio de la profesión.** Advertimos a los miembros de la profesión legal que el rol que los Cánones de Ética Judicial les impone como funcionarios del Tribunal no es un mero concepto que se pueda pasar por alto. En situaciones como la ocurrida en el caso de autos, en las que se extravían piezas de evidencia, los abogados y las abogadas deben ser prudentes y observar los parámetros de ética de la profesión, para procurar que los procedimientos judiciales de los que participen discurran de manera íntegra y justa. Asuntos como estos no pueden tomarse livianamente, pues de ello dependen la honra de la profesión y el funcionamiento de nuestro sistema de gobierno.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: Jane Hoffmann Mouriño

CP-2013-30

SENTENCIA

En San Juan, Puerto Rico, a 12 de noviembre de 2015.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, censuramos enérgicamente a la Lcda. Jane Hoffmann Mouriño por infringir el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Además, le apercibimos que, de incurrir en conducta impropia en el futuro podrá ser sancionada de forma más severa, incluyendo la suspensión indefinida del ejercicio de la profesión. Asimismo, le advertimos que deberá ser más cuidadosa con el ejercicio profesional que desempeña y ceñirse estrictamente a los preceptos del Código de Ética Profesional, supra.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una Opinión

de conformidad a la cual se unieron la Jueza Presidenta señora Fiol Matta y la Jueza Asociada Oronoz Rodríguez. La Juez Asociada señora Rodríguez Rodríguez concurre sin opinión escrita. La Jueza Asociada señora Pabón Charneco concurre con las siguientes expresiones:

"Concurro con la Opinión *Per Curiam* que antecede. Empero, la Oficina de la Procuradora General presentó cargos por violaciones a los Criterios Generales y al Canon 38 del Código de Ética por "crea[r] sin duda alguna **la apariencia** y/o conducta indebida que contempla" el Canon 38. [Énfasis nuestro]. Soy de la opinión de que lo que "sin duda" demuestra este caso es la necesidad de analizar y reevaluar nuestro actual Código de Ética, así como la amplitud de las disposiciones que este contiene. Esto con el fin de proveer normas claras y algún grado de certidumbre a los miembros de la profesión legal en cuanto a la conducta que este Tribunal considera que infringe el Código.

Los Criterios Generales del Código de Ética son esencialmente exhortaciones al buen comportamiento para los abogados y abogadas de Puerto Rico y no disposiciones para disciplinar a los miembros de la profesión. Por lo tanto, la Procuradora General no debe utilizarlos para presentar cargos por violación a estos. Véanse, Comisión para revisar los Cánones de Ética Profesional de Puerto Rico, *Revisión de Cánones de Ética Profesional de Puerto Rico* de 1 de junio de 1970, pág. 3; Comisión Revisora del Código de Ética Profesional, Prefacio del *Proyecto de Reglas de Conducta Profesional*, 2005. Véanse además, G. Figueroa Prieto, *Conducta Profesional*, 81 Rev. Jur. U.P.R. 701 (2012); G. Figueroa Prieto, *Reglamentación de la Conducta Profesional en Puerto Rico: Pasado, Presente y Futuro*, 68 Rev. Jur. U.P.R. 729 (1999)".

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Jane Hoffmann Mouriño

CP-2013-30

Opinión de conformidad emitida por el Juez Asociado señor Martinez Torres a la cual se unieron la Jueza Presidenta señora Fiol Matta y la Jueza Asociada Oronoz Rodríguez.

En San Juan, Puerto Rico a 12 de noviembre de 2015.

Estoy conforme con la censura que se le impone a la Lcda. Jane Hoffmann Mouriño por la conducta en que incurrió. La prueba en el expediente demuestra de forma clara, robusta y convincente que la licenciada Hoffmann Mouriño infringió las disposiciones del Canon 38 de Ética Profesional, 4 LPRA Ap. IX, C. 38, no por incurrir en *apariencia* de conducta profesional impropia, sino porque incurrió, *en efecto*, en conducta impropia al no cumplir **plenamente** con su deber "[…] como funcionari[a] del tribunal […] [de] interesarse en hacer **su propia y <u>cabal aportación</u>** hacia la consecución de una mejor administración de

la justicia". (Énfasis suplido) Íd.

Los eventos que ocurrieron la noche del incidente, según recogidos en el informe de la Comisionada Especial, demuestran que la letrada tomó ciertos documentos que se encontraban en el podio utilizado por los abogados de defensa (donde, casualmente, también se encontraban los documentos extraviados), los dobló y los colocó en **su** carpeta, la cual entregó a su compañero de defensa al finalizar el procedimiento judicial y salir de la sala. Si los documentos extraviados, en efecto, se encontraban en esa carpeta es inmaterial, pues no estamos disciplinando a la licenciada Hoffmann Mouriño por llevárselos. Eso no es lo que se le imputó. Lo verdaderamente importante es que, dadas las circunstancias particulares de este caso, la letrada estaba en posición de hacer una aportación adicional a la investigación. Por eso, cuando los funcionarios del tribunal la alertaron sobre el extravío de los documentos en cuestión, esta tenía el deber -conforme a la obligación antes citada que emana del Canon 38, supra- de informar a los funcionarios del tribunal que su compañero de defensa estaba en posesión de su carpeta, la cual había utilizado durante el procedimiento en la sala, y de ponerla a disposición de estos para que la examinaran.

No puede decirse que la licenciada Hoffmann Mouriño hizo una **cabal aportación** hacia el esclarecimiento del incidente con el mero hecho de mostrar su cartera cuando le fue requerido, sin mencionar la carpeta que se llevó su compañero abogado. Ella sabía que había colocado en su

carpeta y no en su cartera los papeles que manejó durante la vista. Tampoco me parece una excusa válida para no dirigir la atención de los funcionarios del tribunal hacia la carpeta en cuestión el que esta no estaba "bajo su control", pues fue ella misma quien se la entregó a su compañero de defensa.

Valga aclarar que aunque podría plantearse que los hechos probados durante el proceso disciplinario demuestran violaciones a otros cánones de ética, lo cierto es que estamos limitados a evaluar los cargos imputados en la querella presentada por la Oficina de la Procuradora General, y de los cuales la letrada tuvo oportunidad de defenderse. In re Soto Charraire, 186 DPR 1019 (2012); In re Martínez Almodóvar, 180 DPR 805 (2011). Por esa razón, no podemos concluir que los documentos extraviados se encontraban, efectivamente, en la carpeta de la licenciada Hoffmann Mouriño y que por lo tanto ella es responsable por sustraer de una sala judicial, sin autorización, documentos oficiales que formaban parte del expediente del Ministerio Fiscal. Las garantías constitucionales que cobijan a los letrados durante los procedimientos disciplinarios ante este Tribunal nos obligan a abstenernos de corregir, en esta etapa, lo que a todas luces aparentan ser deficiencias en la tramitación del procedimiento.

Ahora bien, lo que no estamos impedidos de hacer es establecer que cuando un profesional del Derecho se encuentra, como en este caso, en posición de hacer aportaciones oportunas a una investigación en curso, no

basta con que se limite a hacer gestiones inútiles, cuando con esfuerzos mínimos adicionales puede contribuir a la resolución del incidente. Solamente de esa forma puede decirse que propiciamos que todos los abogados cumplan el deber de hacer una "**cabal aportación** hacia la consecución de una mejor administración de la justicia". (Énfasis suplido) Canon 38, supra. No podemos negarnos a ejercer nuestra autoridad disciplinaria porque en los Cánones de Ética Profesional no se encuentran enumeradas todas las acciones propias, adecuadas y oportunas que deben hacer los abogados en circunstancias como las de este caso. Eso es imposible, pues por su propia naturaleza, cada incidente y cada investigación tiene sus particularidades que tendremos que evaluar caso a caso a la luz de los deberes que exige el Código de Ética Profesional. Tampoco estamos exigiendo a los abogados que ante una investigación se conviertan en detectives privados. Simplemente requerimos que tomen todas las acciones a su alcance para hacer una verdadera aportación hacia la sana administración de la justicia.

Finalmente, debo señalar que me preocupa que entre los cargos imputados por la Oficina de la Procuradora General se encuentran violaciones a los Criterios Generales de la Parte II del Código de Ética Profesional, 4 LPRA Ap. IX. Al igual que expresa la Jueza Asociada señora Pabón Charneco, entiendo que los Criterios Generales de nuestro Código de Ética Profesional son exhortaciones generales que no deben utilizarse para disciplinar a los abogados. Véase Guillermo Figueroa Prieto, Propuesta para la reglamentación de la

conducta profesional en Puerto Rico, 81 Rev. Jur. UPR 1, 27, n. 97 (2012). Proceder de esa forma tiene el mismo efecto que castigar a una persona por violar la exposición de motivos de una ley.

En ese sentido, dejaría atrás nuestra jurisprudencia donde se han utilizado los Criterios Generales del Código de Ética Profesional para disciplinar a los abogados. Los treinta y ocho Cánones con los que cuenta nuestro Código de Ética, a pesar de que **pueden resultar anticuados y urge su revisión**, **son suficientes para ejercer nuestra autoridad disciplinaria** sobre los profesionales del derecho en Puerto Rico.

Rafael L. Martínez Torres
Juez Asociado