EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| Juan P. Rivera Román (TS-11,263) | 2026 TSPR 5<br><br>217 DPR ___ |

Número del Caso:  CP-2022-0003

Fecha:  21 de enero de 2026

Oficina del Procurador General:

 Hon. Omar Andino Figueroa
 Procurador General

 Lcdo. Edwin B. Mojica Camps
 Subprocurador General

 Lcda. Mabel Sotomayor Hernández
 Subprocuradora General

 Lcda. Yaizamarie Lugo Fontánez
 Procuradora General Auxiliar

 Lcda. Juliana N. Castro Ramos
 Procuradora General Auxiliar

Representante legal del querellado:

 Lcdo. Francisco J. Rivera Álvarez

Comisionada Especial:

 Hon. Gisela Alfonso Fernández

Materia:  Conducta Profesional – Suspensión inmediata del ejercicio de la abogacía y la notaría por un término de 6 meses por infringir los Cánones 23, 35 y 38 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Juan P. Rivera Román
(TS-11,263)

CP-2022-0003

**PER CURIAM**

En San Juan, Puerto Rico, a 21 de enero de 2026.

Nuevamente nos corresponde ejercer nuestro poder disciplinario para evaluar la conducta de un abogado y determinar si infringió los Cánones 23, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

Respondemos lo anterior en la afirmativa, y procedemos a suspender inmediatamente al Lcdo. Juan P. Rivera Román (licenciado Rivera Román o promovido) del ejercicio de la abogacía y la notaría, por un término de seis (6) meses.

Veamos los elementos fácticos que dieron lugar a nuestro proceder.

**I**

El licenciado Rivera Román fue admitido al ejercicio de la abogacía el 30 de junio de 1995.[1] En lo que aquí nos concierne, el pasado 20 de agosto de 2020, la señora Ivelisse Aponte Dominicci (señora Aponte Dominicci o promovente) presentó una *Queja* contra el promovido.[2] Según sus alegaciones, el licenciado Rivera Román se aprovechó de

---

[1] Surge del expediente que el licenciado Rivera Román prestó juramento como notario el 20 de julio de 1995. Según la Secretaría del Tribunal Supremo de Puerto Rico, el promovido continúa activo en el ejercicio de la notaría.
[2] AB-2020-0124.

ella, tras la muerte de su esposo, para apropiarse de miles de dólares.

En su escrito, manifestó que, en el año 2010 y a raíz del fallecimiento de su esposo, el promovido le ofreció ayuda con los trámites conducentes a obtener el certificado de defunción, tramitar la declaratoria de herederos y cobrar seguros de vida y planes de retiro del fallecido. En específico, sostuvo que el licenciado Rivera Román tramitó la obtención de pagos de dos aseguradoras, el Fondo del Seguro del Estado, y Plan de Retiro 401K. A raíz de ello, explicó que el promovido le entregó una factura por $5,000.00, correspondientes al diez por ciento (10%) de honorarios de abogados por los primeros $110,000.00 del pago de seguros. Adujo además que, aprobado el resto de los pagos de seguros, el promovido le solicitó dos (2) cheques de gerente --uno de $3,800.00 y otro de $70,000.00-- con el propósito de hacer un pago al Departamento de Hacienda. Indicó que el licenciado Rivera Román le explicó que la referida agencia les devolvería ese dinero a sus hijos. Así las cosas, el 27 de abril de 2011, la señora Aponte Dominicci entregó al promovido los cheques solicitados.

La promovente alegó que, luego de entregar los cheques y mudarse de Puerto Rico, intentó comunicarse con el promovido para darle seguimiento a la devolución del dinero. No obstante, sostuvo que, además de que fue difícil contactarlo, las veces que sí pudo hacerlo, el licenciado Rivera Román le dijo que el Departamento de Hacienda estaba procesando su pago y que estaría recibiendo el dinero

prontamente. Arguyó que, en octubre de 2018, viajó a Puerto Rico, visitó dos oficinas del Departamento de Hacienda, y ambas le indicaron que no existía ninguna deuda a su nombre ni de su familia. Tampoco constaba en los registros de la agencia algún pago correspondiente a los dos cheques que le había entregado al promovido. Así, expresó que no tuvo éxito en contactar al licenciado Rivera Román, hasta que, el 3 de marzo de 2019, este le respondió por mensaje de texto que "antes de julio" le estarían autorizando un pago. Sin embargo, para ese entonces, la señora Aponte Dominicci llegó a la conclusión de que el promovido se había apropiado ilegalmente de los $73,800.00 entregados "bajo engaño".

El 14 de septiembre de 2021, el licenciado Rivera Román contestó la *Queja* y afirmó que las alegaciones de la promovente se distanciaban de la realidad.[3] Primero, adujo que la señora Aponte Dominicci visitó su oficina para dialogar sobre unas inversiones que interesaba realizar con un dinero que recibiría. En atención a ello, indicó que le solicitó dos (2) préstamos a la promovente --uno de $55,000.00 y otro de $70,000.00--, y que, en el año 2019, saldó el primero, pero el segundo estaba sujeto al cobro de un caso. En lo pertinente a los dos (2) cheques mencionados en la *Queja*, el promovido sostuvo que ambos estaban girados a su nombre, y no a nombre del Secretario de Hacienda, puesto que el de $3,800.00 correspondía a honorarios de abogado, y

---

[3] Tras varios trámites procesales en donde el licenciado Rivera Román solicitó múltiples prórrogas para contestar a la *Queja*, el 2 de septiembre de 2021, concedimos al promovido un término final de diez (10) días para mostrar causa por la cual no se le debía suspender del ejercicio de la profesión de la abogacía.

que el de $70,000.00 correspondía al préstamo mencionado. En cuanto a la alegación de falta de comunicación, el licenciado Rivera Román reconoció que no habló con la señora Aponte Dominicci en el año 2020 por situaciones de salud, pero sí lo hizo en los años previos. Finalmente, el promovente pidió disculpas, y, aunque se mantuvo firme en cuanto a que las acusaciones de la promovente fueron falsas, le remitió unos cheques posdatados para cubrir la totalidad del principal de la deuda de los préstamos.

Enterada de lo anterior, el 19 de octubre de 2021, la señora Aponte Dominicci reaccionó a la contestación del licenciado Rivera Román. En síntesis, manifestó que nunca ha tenido interés en hacer ningún tipo de inversión con el promovido, y que este estaba mintiendo al alegar lo contrario. Reiteró que, en todo momento, el licenciado Rivera Román le indicó que el Departamento de Hacienda le devolvería el dinero entregado, y que si tardaba más tiempo del esperado, la agencia le añadiría intereses al pago. Finalmente, sostuvo que le prestó $55,000.00 al promovido, pero que nunca pudo recuperar el préstamo debido a que este le entregó cheques posdatados con fondos insuficientes.

Tras estos trámites, el 21 de octubre de 2021, remitimos la *Queja* de epígrafe a la Oficina del Procurador General de Puerto Rico (OPG) para la investigación correspondiente.[4] Eventualmente, el 11 de marzo de 2022, recibimos el *Informe de la Oficina del Procurador General*

---

[4] El 11 de enero de 2022 concedimos un término adicional de sesenta (60) días a la OPG para completar su investigación y someter el *Informe* correspondiente.

*de Puerto Rico*, en virtud del cual sostuvo que tras completar su investigación, encontraba que el licenciado Rivera Román había incurrido en conducta contraria a los Cánones 23 y 38 del Código de Ética Profesional, *supra*, y que pudo haber incurrido en una violación al Canon 35. Ante ello, el 27 de mayo de 2022, instruimos a la OPG a que presentara la *Querella* correspondiente.[5]

Cumpliendo con lo ordenado, el 1 de agosto de 2022, la OPG radicó tres (3) cargos contra el aquí promovido:

**CARGO I:** El licenciado Rivera Román infringió el Canon 23 del Código de Ética Profesional, supra, cuando se aprovechó de su relación profesional con su clienta, y la información que obtuvo de esta relación, para solicitar y retener dinero perteneciente a la promovente. El querellado supo que su clienta adquirió más de $125,000 - que él mismo gestionó como abogado, y luego, solicitó y adquirió esos fondos para su uso personal, y los retuvo por años, a pesar de los requerimientos de pago de su clienta. En consecuencia, el querellado infringió el Canon 23 del Código de Ética Profesional, supra, el cual dispone que la naturaleza fiduciaria de la relación abogado-cliente exige que esta debe estar fundada en la honradez absoluta.

**CARGO II:** El licenciado Rivera Román incurrió en conducta antiética, en contravención al Canon 35 del Código de Ética Profesional, supra, cuando engañó a su clienta para retener y utilizar para su beneficio personal un dinero perteneciente a esta. El querellado obtuvo para sí $73,800 de su cliente, bajo el subterfugio de que eran para unos pagos al Departamento de Hacienda por el dinero recibido, siendo lo anterior falso. También faltó a los preceptos del aludido canon cuando informó a este Honorable Tribunal que obtuvo los $73,800 de su cliente por concepto de préstamo, a pesar de que la promovente se los entregó porque este le informó que era para un pago al Departamento de Hacienda. El Canon 35, del Código de Ética Profesional, supra, impone a los abogados y las abogadas el deber de

---

[5] El 29 de marzo de 2022 concedimos a las partes un término de veinte (20) días para expresarse sobre el *Informe* de la OPG, pero estas no comparecieron.

sinceridad y honradez con sus clientes y los tribunales.

**CARGO III:** El licenciado Rivera Román violó el Canon 38 del Código de Ética Profesional, supra, ya que se aprovechó de su relación de abogado-cliente cuando obtuvo información sobre la disponibilidad de unos fondos de su clienta, y luego se los solicitó y los utilizó para su beneficio personal, y no los devolvió por varios años, a pesar de los requerimientos de pago de su clienta. Esta conducta lesiona la imagen de la profesión legal y es contraria al Canon 38 del Código de Ética Profesional, supra, que requiere que los abogados y las abogadas exalten el honor y la dignidad de la profesión, aunque conlleve sacrificios personales, eviten hasta la apariencia de conducta profesional impropia, se conduzcan en forma digna y honorable, y hagan una cabal aportación hacia la consecución de una mejor administración de la justicia.

Tras haber concedido un término al promovido para que expusiera su posición sobre el informe de la OPG, y sin este comparecer,[6] el 12 de noviembre de 2024, designamos como Comisionada Especial en este asunto a la Hon. Gisela Alfonso Fernández (Comisionada Especial Alfonso Fernández), Ex Jueza del Tribunal de Primera Instancia.

Así, el 4 de septiembre de 2025, se celebró una vista probatoria en esta causa. En dicho acto estuvo presente el licenciado Rivera Román, junto a su abogado, el Lcdo. Francisco J. Rivera Álvarez. A su vez, comparecieron la Lcda. Juliana N. Castro Ramos y la Lcda. Melanie Mercado, en representación de la OPG, junto a la señora Aponte Dominicci. Además, compareció a la vista el Lcdo. Lind O. Merle Feliciano, en calidad de testigo de reputación.[7] Surge de la

---

[6] El licenciado Rivera Román presentó su *Contestación a Querella* el 28 de marzo de 2025.
[7] El Lcdo. Juan David Vilaró Colón y el Lcdo. Manuel Cámara Montull comparecieron, mediante *Declaración Jurada*, en calidad de testigos de reputación.

*Minuta* de la referida vista que testificó la señora Aponte Dominicci, el licenciado Rivera Román, y el Lcdo. Lind O. Merle Feliciano. Además, se admitió la identificación de siete (7) folios de mensajes de texto, presuntamente entre la promovente y el promovido.

Finalizada su tarea, el 9 de octubre de 2025, la Comisionada Especial Alfonso Fernández presentó ante esta Curia el *Informe de la Comisionada Especial al Honorable Tribunal*. En este, nos indicó que la señora Aponte Dominicci testificó haber contratado al señor Rivera Román para que le tramitara los seguros que tenía su esposo fallecido, conseguir el certificado de defunción, la planilla de caudal relicto y la declaratoria de herederos, a cambio de honorarios por el diez por ciento (10%) del total de los beneficios que obtuviera a su favor. De lo acordado, sostuvo que, para principios del año 2011, ya había cobrado todo el dinero de los seguros y compensaciones a las cuales tenía derecho. Tiempo después, indicó que el promovido le informó que debía efectuar unos pagos al Departamento de Hacienda que luego se devolverían, por la cantidad de $70,000.00 y $3,800.00. Así, tras efectuar los pagos solicitados por el licenciado Rivera Román, la promovente expresó que nunca recibió un recibo por ello. Sostuvo, además que, en el año 2012, se reunió con el promovido a petición de este, y este le solicitó un préstamo de $55,000.00 para un familiar. En lo pertinente, testificó que el promovido le pagaría con cheques posdatados en el término de un año (1) con un diez por ciento (10%) de interés. No obstante, este acuerdo no se

cumplió, puesto que los cheques nunca tuvieron fondos suficientes.

Con el pasar de los años, arguyó la señora Aponte Dominicci que la comunicación no fue la mejor, ya que la comunicación telefónica entre ellos era inexistente. Por consiguiente, debido a que no obtenía respuesta respecto a los trámites con el Departamento de Hacienda ni sobre los pagos del préstamo, testificó que regresó a Puerto Rico y buscó asesoría con otra abogada en el año 2018. Acto seguido, explicó que acudió a la agencia y, para su sorpresa, no encontró nada allí a su nombre ni de sus familiares. Posteriormente, indicó que, en el año 2021, recuperó la cantidad de los trámites del Departamento de Hacienda, luego de presentar la *Queja* de epígrafe. Además, informó que los $55,000.00 del préstamo fueron recuperados tras un caso de cobro de dinero, en el cual el promovido también pagó los gastos de honorarios de abogado.

Por su parte, el licenciado Rivera Román testificó que la querella de epígrafe era la primera en su contra. Sostuvo que le hizo a la señora Aponte Dominicci todas las gestiones pertinentes a los seguros de vida, pero alegó haberle informado que no hacía caudal relicto ni ningún trámite relacionado con la casa. En cuanto a las alegaciones sobre gestiones en el Departamento de Hacienda, admitió que recibió cheques a su nombre por las cantidades de $70,000.00 y $3,800.00, pero **aclaró que estas cantidades fueron recibidas en calidad de préstamo.** En cuanto a la cantidad de $55,000.00, admitió haberse comprometido a pagar a razón de

un (1) año la cantidad prestada en cheques a un interés de diez por ciento (10%). Sin embargo, indicó que, por razón de circunstancias personales, huracán y pandemia, no pudo cumplir con el acuerdo del pago de préstamo. Finalmente, visiblemente afectado, el licenciado Rivera Román informó haber devuelto el dinero pagado, haber pagado los honorarios de la abogada de la promovente, y haber pagado varios miles de dólares adicionales. En cuanto a los testigos de reputación, estos se expresaron favorablemente sobre el promovido.

Así las cosas, la Comisionada Especial Alfonso Fernández formuló ciertas determinaciones de hechos. Entre estas, determinó que, para abril del año 2011, la promovente había recibido un total de $238,354.46 en beneficios de seguro de vida y retiro de su fallecido esposo, como resultado de las gestiones profesionales del licenciado Rivera Román. Además del dinero recibido, el 27 de abril de 2011, la señora Aponte Dominicci realizó y entregó al promovido dos cheques de gerente por la cantidad de $70,000.00 y $3,800.00, respectivamente.

Determinó, además, que el licenciado Rivera Román pidió un préstamo de $55,000.00 a la promovente, y que, el 16 de noviembre de 2012, firmó un pagaré por esta misma cantidad a favor de la señora Aponte Dominicci, junto con seis (6) cheques posdatados para cumplir con los pagos de dicho préstamo. Sin embargo, la promovente no pudo cobrar los cheques porque estos no tenían fondos suficientes. En lo pertinente a la referida deuda, el 1 de noviembre de 2013,

el licenciado Rivera Román firmó un documento de reconocimiento de deuda y compromiso de pago mediante el cual reconoció que a esa fecha aún adeudaba a la promovente los $55,000.00 del préstamo más intereses. Años después, el 25 de octubre de 2018, el promovido volvió a suscribir un nuevo documento de reconocimiento de deuda y compromiso de pago, comprometiéndose a pagar el préstamo mediante una serie de seis (6) pagos. No obstante, una vez más, el licenciado Rivera Román no realizó los pagos conforme al acuerdo. Así, el 27 de febrero de 2019, después de que se le remitiera al promovido una carta de cobro de dinero, este por fin saldó el préstamo y pagó $5,000.00 por honorarios de abogados a la señora Aponte Dominicci.

Realizada su encomienda, la Comisionada Especial Alfonso Fernández **determinó que la OPG presentó prueba clara, robusta y convincente de que el licenciado Rivera Román había infringido los Cánones 23, 35 y 38 del Código de Ética Profesional**, *supra*. A su vez, señaló que encontró una serie de atenuantes en el desfile de prueba, incluyendo la buena reputación del promovido en su comunidad, que este no ha tenido otras quejas que lleguen al nivel de la que atendemos en esta Opinión *Per Curiam*, y que la promovente recibió total restitución del monto de dinero reclamado.

Expuesto el asunto ante nosotros, procedemos a resolver.

**II**

**A**

El Canon 23 del Código de Ética Profesional, *supra*, regula lo referente a la adquisición de intereses en litigio

y el manejo de los bienes del cliente. En particular, este preceptúa que la naturaleza fiduciaria de las relaciones entre el abogado y su cliente exige que dicha relación esté fundada en la honradez absoluta.[8] Así pues, el abogado debe dar pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión, y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.[9]

En lo pertinente a la controversia que nos ocupa, hemos expresado reiteradamente que un abogado que retiene fondos pertenecientes a sus clientes incurre en una práctica altamente lesiva a la profesión legal, que tiene el efecto de menoscabar la relación de honradez que debe existir entre éstos.[10] Ante esto, hemos resuelto que infringe el Canon 23 del Código de Ética Profesional, *supra*, todo abogado que retiene cualquier cantidad de dinero perteneciente a su cliente.[11] Incluso, según hemos sentenciado en el pasado, la mera dilación en la devolución de esos fondos es causa suficiente para infringir el referido Canon.[12]

**B**

Por otra parte, el Canon 35 del Código de Ética Profesional, *supra*, reconoce que "[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con

---

[8] *In re Rádinson Caraballo*, 2025 TSPR 71, 216 DPR ____ (2025); *In re Ramos Bahamundi*, 2025 TSPR 43, 215 DPR ____ (2025); *In re Rivera Rodríguez*, 202 DPR 1026, 1049 (2019).

[9] *In re Ramos Bahamundi*, *supra*; *In re González Díaz*, 201 DPR 145, 152 (2018); *In re Colón Hernández*, 189 DPR 275, 283-284 (2013).

[10] *In re Rádinson Caraballo*, *supra*; *In re Ramos Bahamundi*, supra; *In re Rivera Rodríguez, supra*, pág. 1050; *In re González Díaz, supra*.

[11] *In re González Díaz, supra*; *In re Rivera Irizarry*, 155 DPR 687, 693 (2001).

[12] *In re Rádinson Caraballo*, *supra*; *In re Rivera Rodríguez*, *supra*, pág. 1050; *In re González Díaz*, *supra*, pág. 152; *In re Colón Hernández*, *supra*, pág. 284.

sus representados y en las relaciones con sus compañeros debe ser sincera y honrada".[13] Es decir, este Canon recoge, por separado, el deber que tienen los abogados y las abogadas de comportarse de forma sincera y honrada en el ejercicio de la profesión legal.[14] De este modo, la verdad es un atributo inseparable de ser abogado, por lo que su compromiso con esta debe ser incondicional.[15]

Los miembros de la abogacía incumplen con este Canon cuando faltan a la verdad, independientemente de las razones que le motiven para ello.[16] A saber, no es sincero ni honrado utilizar medios incompatibles con la verdad.[17] Ejemplo de lo anterior lo es cuando un letrado le provee al tribunal o a su cliente información falsa, que no se ajuste a la verdad, o cuando oculte información que deba ser revelada.[18] De acuerdo con este deber ético, hemos expresado que, debido a que la profesión jurídica está predicada en la búsqueda y defensa de la verdad, resulta inherentemente contrario a su función que un abogado se desvíe de su obligación de ser sincero y honrado en toda faceta en que se desempeñe.[19]

## C

Finalmente, el Canon 38 del Código de Ética Profesional, *supra*, indica que "[e]l abogado deberá esforzarse, al máximo

---

[13] 4 LPRA Ap. IX, sec. 35.
[14] *In re Ramos Bahamundi*, *supra*.
[15] *In re Rivera Lozada*, 176 DPR 215, 226 (2009).
[16] *In re Ramos Bahamundi*, *supra*; *In re Raffucci Caro*, 213 DPR 587, 602 (2024).
[17] *In re Rádinson Caraballo*, *supra*; *In re Rádinson Pérez, et al.*, *supra*, pág. 540.
[18] *In re Ramos Bahamundi*, supra; *In re Jusino Torres*, 210 DPR 919, 933 (2022); *In re Valentín Custodio*, 187 DPR 529, 547 (2012).
[19] *In re Rádinson Caraballo*, *supra*; *In re Sierra Arce*, 192 DPR 140, 147 (2014).

de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia".[20] Es decir, este Canon instituye el deber de todo letrado a exaltar los dos valores fundamentales con los que debe cumplir un abogado, a saber, el honor y la dignidad.[21] Al amparo del mismo, hemos expresado que, debido a que los integrantes de la abogacía son el espejo en donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad, teniendo siempre presente la función social que ejercen.[22] Así pues, hemos reiterado que los abogados deben evitar hasta la mera apariencia de conducta profesional impropia, ya que ésta puede ser perjudicial a la confianza en las instituciones de justicia y en los miembros de la profesión legal.[23] Sobre esto, hemos enfatizado que la confianza, el respeto y la imagen que la sociedad deposita en cada uno de los abogados, en la profesión y en la institución de la justicia desmerece cuando la actuación del abogado representa incorrección.[24]

## III

En esta ocasión nos encontramos ante un panorama donde la evidencia confirma las violaciones éticas que se le han imputado al licenciado Rivera Róman. Es decir, luego de

---

[20] 4 LPRA Ap. IX, sec. 38.

[21] *In re Rádinson Caraballo, supra; In re Ramos Bahamundi, supra; In re Villalona Viera*, 206 DPR 360, 374-375 (2021); *In re Sánchez Reyes*, 204 DPR 548, 574 (2020).

[22] *In re Ramos Bahamundi, supra; In re Stacholy Ramos*, 207 DPR 521, 531 (2021); *In re Ramos Sáenz*, 205 DPR 1089, 1102 (2020).

[23] *In re Rádinson Caraballo, supra; In re Ramos Bahamundi, supra; In re Santos Negrón*, 212 DPR 965, 977 (2023).

[24] *In re Irizarry Rodríguez*, 193 DPR 633, 666 (2015).

examinar la conducta del promovido, a la luz de la normativa aplicable, del expediente del caso y del *Informe* presentado por la Comisionada Especial Alfonso Fernández, surgen fundamentos suficientes para determinar que el letrado infringió los Cánones 23, 35 y 38 del Código de Ética Profesional, *supra*. Veamos.

Primeramente, en relación con el Cargo I, surge de los hechos estipulados ante la Comisionada Especial Alfonso Fernández que, para abril de 2011, el licenciado Rivera Román tenía conocimiento de que la promovente había recibido un total de $238,354.46 en beneficios de seguro de vida y retiro de su fenecido esposo. Esto surge pues, el promovido fue contratado por la señora Aponte Dominicci para representarle en los trámites relacionados al fallecimiento de su esposo. Además, surge de las estipulaciones de hechos que, el 27 de abril de 2011, el licenciado Rivera Román recibió dos cheques de gerente por las cantidades de $70,000.00 y $3,800.00, respectivamente. A su vez, constituye un hecho irrefutable que, el 16 de noviembre de 2012, el promovido firmó un pagaré por $55,000.00 a favor de la señora Aponte Dominicci, y entregó seis (6) cheques posdatados para cumplir con los pagos del préstamo que le solicitó a la promovente. Sin embargo, surge del expediente que la promovente no pudo cobrar los cheques porque no tenían fondos suficientes. A raíz de ello, no fue hasta el 27 de febrero de 2019 que el licenciado Rivera Román pagó los $55,000.00 adeudados a la promovente. En el ínterin, el promovido firmó dos (2) documentos de reconocimiento de

deuda y compromiso de pago, pero nunca cumplió con lo acordado, hasta que la nueva representación de la señora Aponte Dominicci remitió una carta de cobro para que este saldara la deuda. Por su parte, en lo pertinente al cheque de $70,000.00, el promovido pagó esta cantidad el 14 de septiembre de 2021, junto con la *Contestación a Queja*. Así, quedó demostrado que el licenciado Rivera Román incumplió con el deber que le impone el Canon 23 del Código de Ética Profesional, *supra*, al aprovecharse de su relación profesional con la promovente para solicitar y retener dinero perteneciente a esta durante años, a pesar de los requerimientos de pago de su clienta.

En lo pertinente al Cargo II, surge del expediente de la *Querella* que existen versiones contradictorias en cuanto al motivo por el cual la promovente le entregó $73,800.00 al promovido. Por un lado, la señora Aponte Dominicci alega que el licenciado Rivera Román le engañó al solicitar este dinero bajo el subterfugio de que eran para unos pagos al Departamento de Hacienda. Incluso, la promovente sostuvo que, en la poca comunicación que logró tener con el promovido después de haberle entregado el dinero, este le indicó que el Departamento de Hacienda estaba procesando su pago y que estaría recibiendo el dinero prontamente. Además, la promovente presentó una serie de mensajes de texto en sus escritos y en la vista probatoria ante la Comisionada Especial Alfonso Fernández, en la cual arguyó que, el 3 de marzo de 2019, este le respondió por mensaje de texto que "antes de julio" la agencia le estaría autorizando un pago.

Por su parte, el licenciado Rivera Román negó el contenido de estos mensajes de texto, y se mantuvo firme en que los $70,000.00 fueron entregados a su nombre como préstamo, y los $3,800.00 en calidad de honorarios de abogado. No obstante, en su *Informe*, la Comisionada Especial Alfonso Fernández sostuvo que, aunque el promovido no aceptó la totalidad de los hechos alegados por la señora Aponte Dominicci, estos le merecieron total credibilidad. Por tanto, justipreciamos que el abogado faltó a la verdad y transgredió el deber de sinceridad y honradez que impone el Canon 35 del Código de Ética Profesional, *supra*, al engañar a su cliente y a esta Curia cuando obtuvo para sí mismo $73,800.00, bajo el subterfugio de que eran para unos pagos al Departamento de Hacienda.

Finalmente, al examinar íntegramente la conducta del licenciado Rivera Román, no albergamos duda de que esta redunda en un desprestigio a la profesión que juró ejercer conforme a los altos estándares que esta Curia ha establecido. Según surge del expediente, el promovido no solo se aprovechó de su relación de abogado-cliente al obtener información sobre la disponibilidad de unos fondos de su clienta y solicitarle un préstamo para su beneficio personal, sino que tardó años en devolverlos, a pesar de los constantes requerimientos de pago de su clienta. En específico, no fue hasta que la señora Aponte Dominicci contrató a otra abogada, remitió una carta de cobro de dinero y presentó la *Queja* de epígrafe, que el licenciado Rivera Román devolvió el dinero. Sin duda alguna, esta conducta

lesiona la imagen de la profesión legal y es contraria al Canon 38 del Código de Ética Profesional, *supra*, que requiere que los abogados y las abogadas exalten el honor y la dignidad de la profesión.

Así las cosas, concluimos que la prueba que obra en el expediente, tal cual fue creída por la Comisionada Especial Alfonso Fernández, acredita el craso incumplimiento ético del licenciado Rivera Román. Dicho esto, **encontramos aquí prueba clara, robusta y convincente que nos permite estimar probados los cargos imputados**. Resta, pues, evaluar su conducta a la luz de los criterios que hemos establecido para determinar la sanción a ser dispuesta en determinado caso ético.[25]

Según obra en el expediente, el promovido goza de buena reputación en su comunidad y esta es la primera queja en su contra que llega a estos niveles. También es cierto que la señora Aponte Dominicci recibió total restitución del monto de dinero que entregó al licenciado Rivera Román. No obstante, no podemos ignorar los siguientes factores agravantes: (1) el dinero objeto de controversia fue prestado en los años 2011 y 2012, y restituido en los años 2019 y 2021, respectivamente, causándole un perjuicio innegable a la señora Aponte Dominicci durante estos años;

---

[25] Véase, *In re: Rivera Contreras*, 202 DPR 73, 92 (2019) ("... al momento de imponer la sanción disciplinaria a un abogado o una abogada que haya violado el Código de Ética Profesional evaluamos los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial previo; (3) si es su primera falta; (4) si no ha causado perjuicio a alguna parte; (5) la aceptación de la falta y su arrepentimiento sincero; (6) la defensa frívola de su conducta; (7) si se trata de un incidente aislado; (8) si hubo ánimo de lucro, y (9) cualquier otra consideración agravante o atenuante aplicable a los hechos particulares del caso.")

(2) a pesar de mostrar arrepentimiento en la vista probatoria, el promovido no aceptó la totalidad de los hechos alegados; (3) medió ánimo de lucro, pues para cada transacción entre las partes se estableció una cantidad específica y pagadera al licenciado Rivera Román; y (4) no fue hasta que la señora Rivera Román contrató representación legal, remitió una carta de cobro de dinero, y presentó la *Queja* de epígrafe que el promovido por fin saldó su deuda.

Fundamentados en lo anterior, concluimos que la sanción procedente es suspender inmediatamente al licenciado Rivera Román del ejercicio de la abogacía y la notaría,[26] por un término de seis (6) meses, por su craso incumplimiento ético con los Cánones de Ética Profesional. Además, se le apercibe que, de surgir otro asunto disciplinario en el cual se determine que infringió los Cánones de Ética Profesional, podrá ser suspendido indefinidamente.

**IV**

Por los fundamentos previamente expuestos en esta Opinión *Per Curiam*, se decreta la suspensión inmediata del licenciado Rivera Román del ejercicio de la abogacía y la notaría, por un término de seis (6) meses, por su craso incumplimiento ético con los Cánones de Ética Profesional. Además, se le apercibe que, de surgir otro asunto disciplinario en el cual se determine que infringió los Cánones de Ética Profesional, podrá ser suspendido indefinidamente.

---

[26] A pesar de que los hechos que originaron la *Queja* de epígrafe no están relacionados a la función notarial del promovido, es menester que a este también se le suspenda del ejercicio de la notaría.

Se le ordena al licenciado Rivera Román a que notifique a quienes hayan procurado sus servicios legales de su inhabilidad para atender los trabajos pendientes, que devuelva los expedientes de casos pendientes y aquellos honorarios recibidos por trabajos aún no rendidos, y que informe inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga algún caso pendiente. A su vez, tiene la obligación de acreditar y certificar a este Tribunal el cumplimiento con lo anterior, en un término de treinta (30) días contados a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiese conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Además, se ordena al Alguacil de este Tribunal incautar la obra notarial que se encuentra bajo la custodia del promovido, al igual que su sello notarial, para entregarlo a la ODIN para el correspondiente examen e informe. En virtud de su suspensión de la práctica de la notaría, la fianza notarial del señor Rivera Román queda automáticamente cancelada y se considerará buena y válida por tres años después de la terminación en cuanto a actos realizados por el letrado durante el periodo en que la misma estuvo vigente.

Notifíquese.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Juan P. Rivera Román
(TS-11,263)

CP-2022-0003

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de enero de 2026.

Por los fundamentos expuestos en la *Opinión Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión inmediata del licenciado Rivera Román del ejercicio de la abogacía y la notaría, por un término de seis (6) meses. Además, se le apercibe que, de surgir otro asunto disciplinario en el cual se determine que infringió los Cánones de Ética Profesional, podrá ser suspendido indefinidamente.

Se le ordena al señor Rivera Román a que notifique a quienes hayan procurado sus servicios legales de su inhabilidad para atender los trabajos pendientes, que devuelva los expedientes de casos pendientes y aquellos honorarios recibidos por trabajos aún no rendidos, y que informe inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga algún caso pendiente. A su vez, tiene la obligación de acreditar y certificar a este Tribunal el cumplimiento con lo anterior, en un término de treinta (30) días contados a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiese conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Además, se ordena al Alguacil de este Tribunal incautar la obra notarial que se encuentra bajo la custodia del señor Rivera Román, al igual que su sello notarial, para entregarlo a la ODIN para el correspondiente examen e informe. En virtud de su suspensión de la práctica de la notaría, la fianza notarial del señor Rivera Román queda automáticamente cancelada y se considerará buena y válida por tres años después de la terminación en cuanto a actos realizados por el letrado durante el periodo en que la misma estuvo vigente.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina.


Bettina Zeno González
Secretaria del Tribunal Supremo Interina